## COMMONWEALTH *vs.* DAN SMITH.

No. 01-P-158.

Plymouth. May 20, 2002. - August 9, 2002.

Present: CYPHER, MASON, & COHEN, JJ.

*Controlled Substances. Practice, Criminal,* Motion to suppress. *Constitutional Law,* Search and seizure, Reasonable suspicion. *Search and Seizure,* Threshold police inquiry. *Resisting Arrest.*

In a criminal action, the judge erred in the denying the defendant's motion to suppress evidence seized as a result of a police officer's stop of the defendant, where the record demonstrated that the officer, who had observed the defendant standing with others in downtown Brockton on a Saturday afternoon and then proceeding with them to an adjacent alleyway, did not, in the absence of any other circumstances suggesting that criminal activity might be afoot, have an objectively reasonable suspicion that the defendant was engaging in, or was about to engage in, criminal activity at the time of the stop. [571-573]

At a criminal trial, the judge erred in denying the defendant's motion for a required finding of not guilty on the charge of resisting arrest, where there was no evidence presented at trial that the police officer intended to arrest the defendant at the time he attempted to stop him. [574-576]

COMPLAINT received and sworn to in the Brockton Division of the District Court Department on April 18, 2000.

A pretrial motion to suppress evidence was heard by *Robert E. Baylor,* J., and the case was tried before *James F.X. Dinneen,* J.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Carolyn A. Burbine,* Assistant District Attorney, for the Commonwealth.

MASON, J. On April 18, 2000, a complaint issued against the defendant from the District Court charging him with possession of a Class B controlled substance with intent to distribute in violation of G. L. c. 94C, § 32A; possession of a Class B

controlled substance with intent to distribute in a school zone in violation of G. L. c. 94C, § 32J; and resisting arrest in violation of G. L. c. 268, § 32B.[1] Following a jury trial, the defendant was convicted of the lesser included offense of possession of a Class B controlled substance and resisting arrest.

On appeal, the defendant claims that the judge erred in denying his motion to suppress evidence seized from him without a warrant. He also claims that his motion for a required finding of not guilty on the charge of resisting arrest should have been allowed. We agree with these contentions and therefore reverse both convictions.

*The suppression hearing.* The sole witness at the suppression hearing was Officer Daniel Leonard of the Brockton police department, who was one of the arresting officers. We summarize the facts as found by the motion judge, supplemented by testimony of Officer Leonard that was uncontroverted and undisputed, and explicitly or implicitly credited by the motion judge. See *Commonwealth* v. *Santiago*, 410 Mass. 737, 738 n.2 (1991); *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 492 (2001), and cases cited. We are mindful that the judge's subsidiary findings of fact are binding on us absent clear error, while his "findings of ultimate fact deriving from the subsidiary findings are open to reexamination . . . as are [the judge's] conclusions of law." *Commonwealth* v. *Barros*, 435 Mass. 171, 174 n.5 (2001), quoting from *Commonwealth* v. *Angivoni*, 383 Mass. 30, 33 (1981).

On April 15, 2000, Officer Leonard was in uniform and on patrol on a mountain bicycle in a downtown area of Brockton, which he described as a high crime area. At approximately 1:13 P.M., Officer Leonard observed a young black male, later identified as the defendant, standing near a pizza shop on Legion Parkway near Warren Street. The defendant was straddling a "BMX" bicycle and talking to a white male, who appeared to be approximately forty-five years old, and also a white female, who appeared to be forty to forty-five years old.

After a brief conversation, the defendant made a hand gesture toward an auto repair shop named "George's Garage" located

---

[1]The complaint also charged the defendant with disturbing the peace in violation of G. L. c. 272, § 53, but this charge was dismissed prior to trial.

on a lot next to the pizza shop. Then, all three individuals proceeded to an alleyway next to the garage which had a row of parked cars on one side and a brick wall on the other. A sign stating "Private Property — No Trespassing" was posted on the brick wall.

Officer Leonard followed the three individuals into the alleyway and stopped a short distance away from them. The officer observed the white male place his hand into his pocket. Believing that some sort of drug transaction was about to occur, Officer Leonard identified himself as a police officer and asked the individuals what they were doing there. When none of the individuals responded, he told them to stop. The male and the female did so, but the defendant began riding his bicycle in Officer Leonard's direction.

Officer Leonard told the defendant to stop three additional times as the defendant rode toward him. The officer placed his arm out to block the defendant's path. The defendant and Officer Leonard collided, causing the defendant to be knocked to the ground. A struggle ensued between the defendant and Officer Leonard, during which a second officer, Scott Besarick, arrived and sprayed the defendant with pepper spray. Officer Besarick assisted in taking the defendant into custody.

During the struggle, the defendant began spitting up a white substance believed by the officers to be cocaine. Officer Leonard scraped up the substance and placed it in a package, and it later tested positive for cocaine.

The defendant was arrested for resisting arrest and taken to the police station to be booked. During an inventory search, the police found $235.00 in the defendant's pocket.

1. *Suppression issues.* The judge denied the suppression motion, reasoning that the Commonwealth had sustained its burden of showing that Officer Leonard's initial stop of the defendant was warranted because Officer Leonard had a reasonable suspicion that criminal activity was taking place between the defendant and the white male and female. See *Commonwealth* v. *Silva*, 366 Mass. 402, 405 (1974). In reaching this result, the judge relied on the nature of the area as a high crime area, the defendant's action of directing the male and female to an alleyway away from the main street, and the male's action of

placing his hand in his pocket immediately before Officer Leonard intervened.

The defendant contends that each of his actions was equally consistent with innocent activity and, hence, the actions did not provide the officer with reasonable suspicion sufficient to initiate a stop. He also contends that, even if the initial stop was lawful, its scope was not since it involved the use of excessive force. See *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). The Commonwealth, on the other hand, contends that Officer Leonard did not seize the defendant for constitutional purposes until after the defendant had ridden toward him on his bicycle and collided with him and that, at that time, Officer Leonard had a reasonable suspicion that the defendant was engaging in criminal activity.

We reject the Commonwealth's contention that, for constitutional purposes, Officer Leonard did not seize the defendant until after the collision. Officer Leonard's initial order to the defendant and to the man and woman who were with him to stop communicated "what a reasonable person would understand as a command that would be enforced by the police power," and, hence, constituted a seizure of the defendant for constitutional purposes. *Commonwealth* v. *Barros*, 435 Mass. at 176. We note that the man and the woman in fact did stop in response to the officer's order, indicating that they believed, as would any reasonable person, that they were not free to leave after Officer Leonard had ordered them to stop. *Ibid.*

We also conclude that, at the time he told everyone to stop, Officer Leonard did not have an objectively reasonable suspicion of criminal activity, based on specific and articulable facts, necessary to justify such a stop. *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996), citing *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968). It is well settled that such a reasonable suspicion that criminal activity either was occurring or was about to occur "cannot be based on a hunch or on good faith." *Commonwealth* v. *Watson*, 430 Mass. 725, 729 (2000). Moreover, "[j]ust being in a high crime area is not enough to justify a stop." *Commonwealth* v. *Grandison*, 433 Mass. 135, 139 (2001), citing *Commonwealth* v. *Cheek*, 413 Mass. 492, 496 (1992). Otherwise, citizens would be denied the protections of the Federal and

State Constitutions merely because they lived or worked in high crime areas. *Commonwealth* v. *Holley*, 52 Mass. App. Ct. 659, 663 (2001).

In the present case, Officer Leonard observed only that the defendant was standing with an older male and female in the middle of downtown Brockton on a Saturday afternoon and then proceeded to an alleyway adjacent to the premises of an auto repair facility, which the officer indicated at the suppression hearing was open for business at the time. Officer Leonard did not observe any actual transaction or furtive activity on the part of the defendant. Contrast *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992); *Commonwealth* v. *Kennedy*, 426 Mass. 703, 707, 709-710 (1998); *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 51-52 (2000). Nor was the defendant a known drug dealer. In the absence of these or any other additional circumstances suggesting that criminal activity might be afoot, Officer Leonard did not have an objectively reasonable suspicion that the defendant was engaging in, or was about to engage in, criminal activity at the time he stopped the defendant. See *Commonwealth* v. *Bacon*, 381 Mass. 642, 645-646 (1980) (no reasonable suspicion where police observed two young individuals driving an expensive car at 4:00 A.M. in Boston); *Commonwealth* v. *Thibeau*, 384 Mass. 762, 764-765 (1981) (no reasonable suspicion where police observed defendant on bicycle take a sharp left turn upon spotting cruiser). Contrast *Commonwealth* v. *Thompson*, 427 Mass. 729, 734, cert. denied, 525 U.S. 1008 (1998) (reasonable suspicion presented where car was double-parked with engine running very late at night in high crime area in front of townhouse that was subject of current narcotics investigation).

We therefore conclude, contrary to the motion judge, that the stop was unlawful and that, under the fruit of the poisonous tree doctrine, see *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963), the cocaine and other evidence seized from the defendant as a result of the stop should have been suppressed. In reaching this conclusion, we recognize that intervening actions by a defendant may sometimes break the chain of causation between an illegal stop and evidence ultimately seized. "A sufficient causal connection to view evidence as the fruit of an

illegal act is not established merely because 'but for' the illegal police conduct the defendant would not have responded as he did." *Commonwealth* v. *Borges*, 395 Mass. at 795, and cases cited. Nevertheless, the Commonwealth did not argue before the motion judge, and has not argued on this appeal, that, even if the initial stop was unlawful, any intervening actions by the defendant were sufficient to break the "causal chain" between the initial unlawful stop and the subsequent discovery of the cocaine for purposes of the fruit of the poisonous tree doctrine. *Ibid.* See *Commonwealth* v. *Manning*, 44 Mass. App. Ct. 695, 699-700 (1998). Contrast *Commonwealth* v. *Mock*, 54 Mass. App. Ct. 276, 284-285 (2002). Nor are the judge's findings or the underlying record sufficient to permit us on our own to conduct the type of detailed, fact-intensive inquiry necessary to reach such a conclusion. We therefore do not address any such issue but, on the record before us, conclude that the suppression motion should have been allowed because of the unlawful nature of the stop of the defendant, and, hence, that the defendant's conviction for possession of a Class B controlled substance must be reversed.

2. *Resisting arrest.* General Laws c. 268, § 32B, inserted by St. 1995, c. 276, provides in pertinent part:

"(a) A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another."

This statute applies on its face only where the police have attempted to seize or detain a person "with the intention to effect an arrest." *Commonwealth* v. *Grandison*, 433 Mass. at 145, quoting from *Commonwealth* v. *Cook*, 419 Mass. 192, 198 (1994). A stop for purposes of making a threshold inquiry is not an arrest. See *Terry* v. *Ohio*, 392 U.S. 1 (1968). Hence, the statute cannot apply when the police have attempted to seize or detain a person only for the purpose of making a threshold inquiry, as distinct from making an arrest. See *State* v. *Raines*,

124 Ohio App. 3d 430, 432 (1997) ("[F]leeing from a request for a Terry-type stop, while not behavior we condone in any way, does not constitute the crime of resisting arrest"); *Smith* v. *State*, 739 S.W.2d 848, 851 (Tex. Crim. App. 1987) (en banc) (same).

In the present case, there was no evidence presented at trial that, at the time he attempted to stop the defendant, Officer Leonard was intending to arrest the defendant. Rather, Officer Leonard testified that his intent at the time was only to make a threshold inquiry. More specifically, during cross-examination by counsel for the defendant, Officer Leonard testified:

Q. "So your left arm blocked his path?"

A. "That [it] did, yes."

Q. "And that knocked him from his bicycle?"

A. "Correct."

Q. "And he fell into the parked car?"

A. "Correct."

Q. "And then to the ground?"

A. "Correct."

Q. "And then you were on top of him?"

A. "Correct."

Q. "And at that time you weren't arresting anyone. Correct?"

A. "No one was under arrest at that time, no."

Q. "So you were just trying to inquire of the group?"

A. "Correct."

Officer Leonard further testified that, when he was struggling with the defendant on the ground, he was not trying to handcuff him, but rather was "trying to control him, his egress or ingress or however you want to say it, at that time." Officer Besarick testified that, when he arrived on the scene, his purpose was to render assistance to Officer Leonard. He did not testify that he had any purpose independent of rendering assistance to Officer Leonard.

In light of this testimony, we agree with the defendant that his motion for a required finding of not guilty on the charge of resisting arrest should have been allowed. There was not sufficient evidence to support such a conviction.

*Judgments reversed.*

*Verdicts set aside.*