COMMONWEALTH *vs.* QUINTOS Q.,[1] a juvenile.

No. 08-P-17.

Middlesex. December 2, 2008. - March 19, 2009.

Present: McHUGH, BROWN, & VUONO, JJ.

Further appellate review granted, 454 Mass. 1107 (2009).

*Delinquent Child. Resisting Arrest.*

The evidence at a proceeding in Juvenile Court was not sufficient to support the juvenile's adjudication of delinquency on a charge of resisting arrest, where, even assuming that police pursuit of the juvenile began when he ran away from the car stopped by police in which he was a passenger, there was no objective communication to the juvenile that the officers were attempting to effect an arrest of him, nor was there evidence that the juvenile understood that the officers had such an intent, and where there was no evidence that the juvenile's flight exposed the officers to a substantial risk of bodily injury. [829-832]

This court did not reach a claim that the judge at a proceeding to adjudicate a juvenile delinquent did not apply the correct standard for a finding of delinquency. [832]

COMPLAINT received and sworn to in the Middlesex County Division of the Juvenile Court Department on August 11, 2006.

The case was heard by *Jay D. Blitzman*, J.

*John T. Ouderkirk, Jr.*, for the juvenile.

*Hallie White Speight*, Assistant District Attorney, for the Commonwealth.

BROWN, J. This is an appeal from an adjudication of delinquency of a juvenile convicted of resisting arrest pursuant to G. L. c. 268, § 32B.[2] The juvenile seeks to reverse the adjudication of delinquency on the ground that there was not sufficient

---

[1] A pseudonym.

[2] The Commonwealth also charged the juvenile with receiving a stolen motor vehicle, for which he was tried in a separate proceeding and committed to the Department of Youth Services.

evidence to support each element of the charge. We agree and reverse the adjudication of delinquency.[3]

A fact finder could have found the following facts. On June 12, 2006, around 5 P.M. or 6 P.M., a Stoneham police officer in a marked cruiser commenced pursuit of two juveniles in a car. He followed the car on several back roads, and when the driver went onto Route 28, the officer turned on his sirens and lights in an effort to cause the driver to stop. The driver failed to pull over and began weaving through traffic, traveling at certain times at speeds of up to forty to fifty miles per hour. This initial chase lasted five to six minutes. A second officer joined in the chase in the last one-eighth mile in his own marked cruiser with the lights and sirens on. The car finally turned into an apartment complex, where it crashed into bushes at a "dead end."

The first officer stopped his cruiser and stepped out of his vehicle, following the juveniles who were now running through four- to five-foot tall "very full" bushes; the officer was required either to jump over or go through the bushes. He tripped and fell onto the sidewalk behind a bush and sprained his wrist, after which he lost sight of the two juveniles. He returned to his cruiser. The second officer, upon seeing the first officer return, drove his cruiser to a different location in the complex. He saw the juveniles come out of the bushes and run through the parking area. The officer commenced chase on foot, yelling, "Stop, police. Stop, police." The officer climbed a three- to five-foot high stone wall in pursuit of the juvenile here. The juvenile (who had been the passenger in the car) now found himself trapped between a building with a locked door, a fence, and the officer. The juvenile offered no resistance when he was finally cornered, handcuffed, and placed in the cruiser.

1. *Resisting arrest charge.*[4] We review the sufficiency of the evidence supporting the resisting arrest charge under the familiar

---

[3]The juvenile also claims that the trial judge found delinquency based merely on "sufficient evidence" rather than the well-established "beyond a reasonable doubt" standard.

[4]The resisting arrest charge, on which the juvenile was found delinquent, was tried four months after the incident. The juvenile's counsel asserts that the Commonwealth pursued this action so as to be able to order the juvenile to pay restitution for the property damage resulting from the crash of the vehicle into some landscaping in the parking lot.

*Latimore* standard. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). The charge of resisting arrest requires the Commonwealth to prove beyond a reasonable doubt that the juvenile "knowingly prevent[ed] or attempt[ed] to prevent a police officer, acting under color of his official authority, from effecting an arrest of the actor or another, by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which create[d] a substantial risk of causing bodily injury to such police officer or another." G. L. c. 268, § 32B(*a*), inserted by St. 1995, c. 276.

Because the juvenile, after being cornered, offered no resistance and did not exhibit any noncooperation when being handcuffed and placed in the cruiser, there was no physical force or resistance which would implicate G. L. c. 268, § 32B(*a*)(1). See and compare *Commonwealth* v. *Maylott*, 65 Mass. App. Ct. 466, 467, 469-470 (2006). See also *Commonwealth* v. *Katykhin*, 59 Mass. App. Ct. 261, 262-263 (2003). Thus, only § 32B(*a*)(2) is in question here.

We have recently decided two cases discussing § 32B(*a*)(2): *Commonwealth* v. *Grant*, 71 Mass. App. Ct. 205, 208-210 (2008), and *Commonwealth* v. *Montoya*, *ante* 125 (2008). We think the factual scenario here more closely resembles that in *Grant* than the scenario in *Montoya*.

It is well known that "the crime [of resisting arrest] is committed, if at all, at the time of the 'effecting' of an arrest." *Commonwealth* v. *Grandison*, 433 Mass. 135, 145 (2001). An arrest is effected when there is "(1) 'an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained.' " *Ibid.*, quoting from *Commonwealth* v. *Cook*, 419 Mass. 192, 198 (1994). In *Commonwealth* v. *Grant*, 71 Mass. App. Ct. at 209-210, this court held that where a pursuit and the question of a constructive seizure or detention are involved, in order to bring a defendant's conduct within the purview of the resisting arrest statute, the words or actions of the officers must have "objectively communicated [the intent to arrest] to the defendant prior to, or during the pursuit." *Id.* at 209. The Commonwealth relies on the fact that the police cruiser had its lights and sirens on as it pursued the car in which the juvenile was a passenger as indicative of the offi-

cers' intent to arrest the occupants.[5] We disagree, as there was no way for the occupants of the car to know that the police were trying to stop the car for something other than a traffic violation.[6] Even if the police officers had "reasonable suspicion" of criminal activity, providing a basis to stop the vehicle, an intent to stop for questioning is not identical to an intent to effectuate an arrest; the flashing lights could not objectively communicate that there was an intent to arrest rather than an intent to stop and question. Moreover, it is to be noted that ordinarily "pursuit of a vehicle for a traffic violation does not constitute, without more, pursuit of a passenger for these purposes." *Commonwealth* v. *Wilson*, 52 Mass. App. Ct. 411, 413 (2001).

The Commonwealth argues, relying on *Commonwealth* v. *Wilson, supra,* that pursuit of the juvenile in the instant circumstances began when he left the car. However, even if we assume this to be the case, there was no objective communication to the juvenile that the officers were attempting to effect an arrest of him, nor was there evidence proving that the juvenile understood that the officers had such an intent. See *Commonwealth* v. *Grant*, 71 Mass. App. Ct. at 209. The juvenile was simply running away. Even when the second officer commenced his pursuit of the juvenile and yelled, "Stop, police. Stop, police," there was no indication that the command was "so understood [as an arrest] by the person [pursued]," particularly since there were two juveniles, the driver and the passenger. *Commonwealth* v. *Cook*, 419 Mass. at 198. Cf. *Commonwealth* v. *Montoya, supra* at 128 ("verbal notification to an individual that he is being arrested is not conclusive on the question when an arrest occurs"). "Fleeing from, or even resisting, a stop or patfrisk does not constitute the crime of resisting arrest." *Commonwealth* v. *Grant, supra* at 209. See *Commonwealth* v. *Smith*, 55 Mass. App. Ct. 569, 574-575 (2002) (stop for purpose of making threshold inquiry is not arrest, and statute does not apply); *Commonwealth* v. *Pagan*, 63 Mass. App. Ct. 780, 784

---

[5]The Commonwealth also claims that this was not a routine traffic stop. However, the record lacks any facts that show this was communicated to the occupants of the car.

[6]At best, these facts would tend to support a charge against the driver for failure to stop for a police officer. See G. L. c. 90, § 25.

(2005) (statute does not apply to patfrisks). Accord *Commonwealth* v. *Lender*, 66 Mass. App. Ct. 303, 305-306 (2006). As the recent *Montoya* case reiterates, "[t]he crime [of resisting arrest] is committed . . . at the time of the 'effecting' of an arrest." *Commonwealth* v. *Montoya, supra* at 127, quoting from *Commonwealth* v. *Grant, supra* at 208.

The *Montoya* case is distinguishable from the instant case because in *Montoya* the evidence showed that the defendant's flight began after the police, with guns drawn, surrounded the defendant and ordered him to stop. *Commonwealth* v. *Montoya, supra* at 132. Moreover, the evidence in the present case of "the *circumstances* [emphasis in original] of [the juvenile's] flight [did not] expose his pursuers to a 'substantial risk of bodily injury,' " as contemplated by § 32B(*a*)(2). *Id.* at 130. There has been no showing that the juvenile used physical force or violence or any other means contemplated by § 32B to counter the police officers' efforts to capture him. Thus, the evidence is insufficient to support the conviction of resisting arrest. See *Commonwealth* v. *Grant, supra* at 210.

2. *Judge's instructions.* Deciding as we do that the adjudication of delinquency is reversible error, we have no need to address the juvenile's claim that the judge did not apply the correct standard for a finding of delinquency (see note 3, *supra*). We reiterate, however, the familiar principle that in reviewing a jury-waived proceeding, "[a] trial judge sitting without a jury is presumed, absent contrary indication, to have correctly instructed himself as to the manner in which evidence is to be considered in his role as factfinder." *Commonwealth* v. *Batista*, 53 Mass. App. Ct. 642, 648 (2002).

For the foregoing reasons, we reverse the adjudication of delinquency on the charge of resisting arrest; the finding of delinquency is set aside; and judgment is to enter for the juvenile.

*So ordered.*