COMMONWEALTH *vs.* QUINTOS Q., a juvenile.

Middlesex. February 9, 2010. - June 15, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Delinquent Child. Resisting Arrest. Arrest.*

The evidence at a proceeding in the Juvenile Court was not sufficient to support the juvenile's adjudication of delinquency on a charge of resisting arrest when he fled from a vehicle in which he was a passenger as it was being pursued by a police cruiser, where, although there was evidence of a seizure of the vehicle when one police officer activated the lights and siren on his cruiser, there was no evidence as to his or a fellow police officer's intentions to effect an arrest when they pursued the fleeing juvenile, and even assuming that the circumstances of the police pursuit in this case themselves communicated an intent to arrest, a reasonable passenger, innocent of any crime, would assume that it was the driver whom the police intended to arrest. [109-112]

COMPLAINT received and sworn to in the Middlesex County Division of the Juvenile Court Department on August 11, 2006.

The case was heard by *Jay D. Blitzman,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Hallie White Speight,* Assistant District Attorney, for the Commonwealth.

*John T. Ouderkirk, Jr.,* for the juvenile.

IRELAND, J. In 2006, the juvenile was adjudicated delinquent in a jury-waived trial on a complaint charging resisting arrest. G. L. c. 268, § 32B. The juvenile appealed, and the Appeals Court reversed his adjudication on the ground of insufficient evidence. *Commonwealth* v. *Quintos Q.,* 73 Mass. App. Ct. 828 (2009). We granted the Commonwealth's application for further appellate review. Because we agree with the Appeals Court that, in the circumstances of this case, there was insufficient evidence to prove that when the juvenile fled from police his arrest was

being effected within the meaning of the statute, we reverse his adjudication of delinquency.[1]

*Facts.* We present the essential facts, adding certain details in our discussion of the issue raised.

On June 12, 2006, during the evening rush hour, Officer Kenneth Wilkins of the Stoneham police department, who was in a marked cruiser, commenced pursuit of a vehicle in which the juvenile was a passenger. The driver was the only other person in the vehicle. Wilkins followed the vehicle on some back roads. When the vehicle turned onto Main Street (Route 28), the officer activated his lights and siren in an attempt to stop it. The driver did not stop; rather, he began to weave in and out of the rush hour traffic, sometimes becoming "bogged down in traffic" but at other times reaching speeds of forty to fifty miles per hour. The chase, which lasted approximately five or six minutes, ended when the vehicle turned into the parking lot of a condominium complex and crashed into some bushes at a "dead end."

Both occupants left the vehicle and ran through the bushes. Wilkins got out of his cruiser but did not have time to say anything to the fleeing pair. He attempted to follow them through the bushes, but he tripped and fell, losing sight of them.[2] He then returned to his cruiser.

A second officer, Joseph Ponzo, who had joined the chase during the last one-eighth mile, also was in the parking lot. After seeing Wilkins return to his cruiser, Ponzo drove his cruiser to another part of the parking lot and saw the pair. He commenced a chase on foot and yelled, "Stop, police. Stop, police." Ponzo followed the juvenile as he climbed a wall. The juvenile became trapped between a building with a locked door, a fence, and Ponzo. The Commonwealth presented no evidence that the juvenile offered any resistance to his apprehension once he was cornered, which supports an inference that, at that point, the juvenile cooperated with his arrest.[3]

---

[1]Cf. *Commonwealth* v. *Montoya, ante* 102 (2010), released today, affirming a conviction of resisting arrest where the circumstances of the defendant's flight from police officers while they were effecting an arrest created a substantial risk of injury to the officers.

[2]Officer Wilkins sprained his wrist during the fall.

[3]In another proceeding, the juvenile, who also was charged with receiving a

*Discussion.* The juvenile argues that there was insufficient evidence to convict him of resisting arrest. We review the evidence in the light most favorable to the Commonwealth to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 318-319 (1979).

General Laws c. 268, § 32B (*a*), provides, in relevant part:

> "A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effecting an arrest . . . by . . . using any other means which creates a substantial risk of causing bodily injury to such police officer or another."[4]

According to the statute's language, resisting arrest "is committed, if at all, at the time of the 'effecting' of an arrest." *Commonwealth* v. *Grandison,* 433 Mass. 135, 145 (2001), quoting G. L. c. 268, § 32B (*a*). An arrest is effected where there is "an actual or constructive seizure or detention of the person, performed with the intention to effect an arrest and so understood by the person detained." *Commonwealth* v. *Grandison, supra,* quoting *Commonwealth* v. *Cook,* 419 Mass. 192, 198 (1994), *S.C.,* 447 Mass. 1023 (2006), and *S.C.,* 451 Mass. 1008 (2008). In considering whether the person detained understood that he or she was under arrest, we consider "not what the defendant . . . thought, but what a reasonable [person], innocent of any crime, would have thought in the defendant's shoes." *Commonwealth* v. *Borges,* 395 Mass. 788, 792 n.3 (1985), quoting *Massachusetts Gen. Hosp.* v. *Revere,* 385 Mass. 772, 778 (1982), rev'd on other grounds, 463 U.S. 239 (1983).

The juvenile argues that the arrest did not occur until he was

---

stolen motor vehicle, was tried and committed to the Department of Youth Services. The charge of resisting arrest was brought separately, some two months later. At his trial on resisting arrest, the Commonwealth represented that it brought the resisting arrest charge because it wanted the juvenile to be held liable for the damages that were caused to the landscaping.

[4]General Laws c. 268, § 32B (*a*) (1), states that one also resists arrest by "using or threatening to use physical force or violence against the police officer or another." This subsection is not applicable here because the Commonwealth offered no evidence that the juvenile used any force or violence.

trapped. We agree. Here, there was no testimony about the officers' intentions when they pursued the fleeing juvenile. Although it was later discovered that the vehicle in which the juvenile had been riding was stolen, the officers did not testify to knowing this at the time.[5] Moreover, we conclude that the officers did not communicate to the juvenile an intent to arrest him.

The Commonwealth argues, as it did before the Appeals Court, that there was sufficient evidence to establish that the occupants of the vehicle were seized and that the officers were intending to effect an arrest. We agree that there was evidence of a seizure when Wilkins activated his lights and siren, thus satisfying the first element of effecting an arrest. See *Commonwealth* v. *Smigliano*, 427 Mass. 490, 491-492 (1998) (activating police cruiser's blue lights constituted seizure); *Commonwealth* v. *Stoute*, 422 Mass. 782, 789 (1996) (under art. 14 of Massachusetts Declaration of Rights, pursuit which indicates that person would not be free to leave without responding to officer's inquiry is functional equivalent to seizure). See *Brendlin* v. *California*, 551 U.S. 249, 251 (2007) (passenger in vehicle stopped for traffic violation is seized and may challenge constitutionality of stop).

Concerning the second element of resisting arrest, the Commonwealth concedes, as it must, that there was no testimony from the officers concerning an intent to arrest the juvenile, nor was there testimony concerning the crime for which they would have arrested him. It nevertheless argues that an intent to arrest can be inferred from the "intensity of the pursuit" involving two cruisers, with the officers continuing to chase the vehicle even though the driver tried to evade them, and then the officers' pursuit on foot. We agree with the Appeals Court:

> "[T]here was no way for the [juvenile] to know that the police were trying to stop the car for something other than a traffic violation. Even if the police officers had 'reasonable suspicion' of criminal activity, providing a basis to stop the vehicle, an intent to stop for questioning is not identical to an intent to effectuate an arrest; the flashing

---

[5]At the conclusion of the testimony, the judge remarked that no one knew why Officer Wilkins initially began pursuing the vehicle. Wilkins's testimony concerning at what point the vehicle was speeding was not entirely clear.

lights could not objectively communicate that there was an intent to arrest rather than an intent to stop and question." (Footnote omitted.)

*Commonwealth* v. *Quintos Q.*, *supra* at 831. Even assuming that the circumstances of the police pursuit in this case communicated an intent to arrest, we conclude that a reasonable passenger, innocent of any crime, would assume that it was the driver that the police intended to arrest. See *Commonwealth* v. *Torres*, 424 Mass. 153, 157 (1997) ("a passenger . . . in the absence of his own individual misbehavior or suspicious conduct, could expect that the formalities involved in [a] traffic stop would take place solely between the driver and the [police]").

Moreover, once Ponzo began to pursue the juvenile on foot, even if there was an intent to arrest, in the circumstances of this case, Ponzo's yelling, "Stop, police," was not enough to communicate to the juvenile an intent to arrest to him, as opposed to communicating that Ponzo wanted him to stop.[6] Although it is true that police do not need to use the word "arrest" in order for there to be an arrest, it does not follow that saying the word "stop" was the equivalent of an arrest in this case. *Commonwealth* v. *Sanderson*, 398 Mass. 761, 766 (1986). Rather, the test is whether a reasonable person would have understood that he was under arrest. *Id.* In the circumstances here, a passenger in the vehicle, innocent of any crime, could not reasonably be said to understand the pursuit and the words, "Stop, police," to mean more than simply an order to stop.

The Commonwealth argues that in order to satisfy the third element of resisting arrest, we should conclude that "[f]or the person who is being detained or pursued, no more should be required than that the person understand that he or she is not free to leave." We need not belabor our reasons for declining to adopt such a conclusion except to say that it would conflate our jurisprudence distinguishing *Terry*-type stops from arrests.[7] See, e.g., *Commonwealth* v. *Willis*, 415 Mass. 814, 819-820 (1993),

---

[6]The juvenile argues that there was no evidence presented showing that he could hear Ponzo. There was testimony concerning the distance between Ponzo and the juvenile, involving use of a chalk of the parking lot. We conclude that the judge implicitly found that the juvenile could hear Ponzo.

[7]We also reject the Commonwealth's argument that our holding will "hinder

and cases cited (distinguishing between *Terry*-type stop and arrest). As the Appeals Court stated, under *Terry* v. *Ohio*, 392 U.S. 1, 26 (1968), stopping a person for purpose of a threshold inquiry is not an arrest and, therefore, the resisting arrest statute cannot apply where police have detained a person in order to make a threshold inquiry rather than an arrest. *Commonwealth* v. *Smith*, 55 Mass. App. Ct. 569, 574-575 (2002), and cases cited. Thus "fleeing from a request for a *Terry*-type stop . . . does not constitute the crime of resisting arrest." *Id.* at 575, quoting *State* v. *Raines*, 124 Ohio App. 3d 430, 432 (1997).

Here, we agree with the Appeals Court that the juvenile was not resisting arrest, but was merely running away from the police. *Commonwealth* v. *Quintos Q.*, *supra* at 831. Because the flight prevented police from effecting a stop rather than an arrest, the flight is not covered by the statute. See *Commonwealth* v. *Smith*, *supra* at 574-575.

*Conclusion.* For the reasons set forth above, the Commonwealth failed to present sufficient evidence to prove that, when he fled from the vehicle in which he was a passenger, the juvenile was resisting arrest. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). Accordingly, the adjudication of delinquency is reversed, the finding of delinquency is set aside, and the complaint shall be dismissed.

*So ordered.*

police officers in the performance of their duties." We agree with the juvenile that the solution is for prosecutors to make informed choices in deciding whether to charge an individual with resisting arrest.