MALDONADO, J.
*742 After a bench trial, the defendant was convicted of carrying a loaded firearm without a license and defacing a firearm serial number.[1] The defendant appeals only from the denial of his motion to suppress the firearm. The issue before us is whether a police officer was justified in stopping the defendant, who was walking with a man for whom the officer had an active *743 arrest warrant involving the use of a firearm in the commission of a violent felony. Concluding that under these narrow circumstances police and public safety concerns outweighed the minimal intrusion on the defendant's liberty for the time it took for police to take control of the scene and effectuate the other individual's arrest, we affirm.
Background. The judge made the following factual findings. In the afternoon of March 25, 2015, shots were fired down Winter Street in Haverhill and struck and wounded a passerby. Haverhill police officers *866 received reports that a man named Joshua Perez had fired the shots, and they obtained a warrant for his arrest.[2]
A few days later, on April 1, at approximately 5 P.M. , local, State, and Federal law enforcement officers converged on Brook Street and Hilldale Avenue in Haverhill believing that Perez was in that area. Detective Glen Fogarty, who was alone in an unmarked police cruiser, heard a radio transmission that indicated that Perez was walking toward his position. Fogarty then saw Perez, who was walking down the street with another man-later identified as the defendant, William Ramirez. Fogarty drove his cruiser to the side of the road just ahead of the two men. He stepped from his cruiser, "identified [himself] as a police officer," and said, "Haverhill Police. Come here, I want to talk to you"[3] to the two men. Perez walked to the rear of Fogarty's cruiser but the defendant walked away-adjusting his waistband as he did so.[4] In Fogarty's experience, the defendant's gesture to his waist was consistent with someone concealing a firearm.
Fogarty ordered the defendant to come back and the defendant complied, joining Perez with his hands on the back of the cruiser. Fogarty called for back-up, which arrived within minutes. Perez was arrested and the defendant was pat frisked. Police officers found a knife and a firearm on the defendant's person.
Discussion. "[W]e accept the [motion] judge's subsidiary findings of fact absent clear error"; however, we review independently his ultimate findings and conclusions of law. Commonwealth v. Scott, 440 Mass. 642, 646, 801 N.E.2d 233 (2004), quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218, 780 N.E.2d 2 (2002).
*744 1. The stop. The Commonwealth asserts that the defendant was not stopped when Fogarty first spoke to the two men but, rather, when Fogarty, after seeing the defendant adjusting his waistband, spoke to the defendant a second time. We disagree.
A person is "seized" by police if, in view of all of the circumstances surrounding the incident, a reasonable person would not believe that he was free to leave. Commonwealth v. Borges, 395 Mass. 788, 791, 482 N.E.2d 314 (1985). The police may converse with, and even ask questions of, members of the public without requiring constitutional justification. Commonwealth v. Barros, 49 Mass. App. Ct. 613, 617-618, 731 N.E.2d 538 (2000), S.C., 435 Mass. 171, 755 N.E.2d 740 (2001). However, when the police issue commands to stay put, they seize whomever they address. Id. at 618, 731 N.E.2d 538 (when officer said, after being initially rebuffed, " 'Hey you. I wanna talk to you. Come here.'-the defendant was seized"). See Commonwealth v. Grandison, 433 Mass. 135, 138, 741 N.E.2d 25 (2001) ("[P]ursuit and a stop did not occur until [police officer] commanded the defendant to stop and emerged from the cruiser").
Here, when Fogarty uttered "Haverhill Police. Come here. I want to talk to you," he did not merely ask to speak to the two men; rather, he stepped out from his cruiser, announced his authority, and ordered *867 both men to "[c]ome here." See Barros, supra at 618, 731 N.E.2d 538. Under those circumstances, a reasonable person would not have felt free to leave. Contrast Commonwealth v. Thinh Van Cao, 419 Mass. 383, 388, 644 N.E.2d 1294, cert. denied, 515 U.S. 1146, 115 S.Ct. 2588, 132 L.Ed.2d 836 (1995) (no seizure when officer asked defendant questions in unconfined public space); Commonwealth v. Rock, 429 Mass. 609, 611, 710 N.E.2d 595 (1999) (no seizure when officer exited unmarked cruiser and asked, "Guys, can I talk to you for a second?"); Commonwealth v. Nestor N., 67 Mass. App. Ct. 225, 228, 852 N.E.2d 1132 (2006) (no seizure when officer exited van, identified himself, and asked, "[H]ang on a second ... can I talk to you?"). Accordingly, we conclude that the defendant was stopped in a constitutional sense when Fogarty first spoke to the two men. We turn now to whether the officer was justified in stopping the defendant at that moment. See Commonwealth v. Gomes, 453 Mass. 506, 510, 903 N.E.2d 567 (2009) ("Having determined that the defendant was stopped in the constitutional sense, we consider whether the actions of the officers were justified in the circumstances"); Commonwealth v. Swanson, 56 Mass. App. Ct. 459, 462, 778 N.E.2d 958 (2002) ("a seizure ... must be justified").
2. Justification for the stop. Ordinarily, "[a] police officer may make an investigatory stop 'where suspicious conduct gives the *745 officer reasonable ground to suspect that a person is committing, has committed, or is about to commit a crime.' " Gomes, supra at 510-511, 903 N.E.2d 567, quoting from Commonwealth v. Wilson, 441 Mass. 390, 394, 805 N.E.2d 968 (2004). In this case, the parties agree that the defendant engaged in no reasonably suspicious criminal behavior before Fogarty ordered the men to stop. The Commonwealth, however, urges us to follow emerging jurisprudence of other jurisdictions that would permit the seizure of all companion persons every time an officer has an arrest warrant for any individual member of the group. While we are not prepared to accept such a sweeping proposition, we are persuaded that an officer may temporarily freeze a scene for the limited time reasonably necessary to safely execute an arrest warrant for a person accused of using a firearm in the commission of a violent felony. See Commonwealth v. Wing Ng, 420 Mass. 236, 237-240, 649 N.E.2d 157 (1995) (police can justifiably remove all other passengers from vehicle in which there is suspect subject to arrest warrant for violent felony).
"The pertinent inquiry is whether the degree of intrusion is reasonable in the circumstances," Commonwealth v. Moses, 408 Mass. 136, 141, 557 N.E.2d 14 (1990), and the reasonableness of the stop is determined by balancing public interest against "the individual's right to personal security free from arbitrary interference by law officers," Commonwealth v. Trumble, 396 Mass. 81, 86, 483 N.E.2d 1102 (1985), quoting from United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).
In the present circumstances, we balance the minimal intrusion upon an individual's freedom for the brief period it would take for an officer to take control of the scene and effectuate an arrest with "[t]he special dangers encountered by an arresting officer," Commonwealth v. Skea, 18 Mass. App. Ct. 685, 701, 470 N.E.2d 385 (1984), when executing an arrest warrant for a crime that gives rise to a reasonable fear for officer safety. See Commonwealth v. DePeiza, 449 Mass. 367, 374, 868 N.E.2d 90 (2007) (officers suspecting that suspect had unlicensed, concealed firearm may pat frisk suspect for officer safety);
*868 Terry v. Ohio, 392 U.S. 1, 28, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (officer suspecting armed robbery may pat frisk suspects for weapons for officer safety).
In an analogous situation, the Supreme Judicial Court acknowledged that the inherent volatility of executing a search warrant requires police to "exercise unquestioned command" of the scene. Commonwealth v. Charros, 443 Mass. 752, 763, 824 N.E.2d 809, cert. denied, 546 U.S. 870, 126 S.Ct. 374, 163 L.Ed.2d 162 (2005), quoting from *746 Michigan v. Summers, 452 U.S. 692, 702-703, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). There, the court held that the seizure of "persons on the premises" during the execution of a search warrant is justifiable due in part to "the interest of the safety of all involved." Id. at 763, 824 N.E.2d 809. See Commonwealth v. Catanzaro, 441 Mass. 46, 53, 803 N.E.2d 287 (2004), quoting from Summers, supra at 703, 101 S.Ct. 2587 ("detention of an occupant" of residence subject to search warrant "is only an 'incremental intrusion' " on liberty); Bailey v. United States, 568 U.S. 186, 194, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013), citing Summers, supra at 702-703, 101 S.Ct. 2587 (noting three important interests served by allowing police to briefly detain occupants of residence during execution of search warrant: "officer safety, facilitating the completion of the search, and preventing flight").
In Charros, the Supreme Judicial Court reasoned that the "authority [to detain these persons] is incidental to, and exists contemporaneously with, the execution of the warrant" and "arises from necessity, that is, from the need to control the inherent volatility produced by the search environment." Charros, supra at 763, 824 N.E.2d 809. See Catanzaro, supra at 51-53, 803 N.E.2d 287 (seizure of occupant fifty to seventy feet away from apartment is reasonable). See also Commonwealth v. Mattier (No. 2), 474 Mass. 261, 270, 50 N.E.3d 157 (2016) ("limited authority" to detain occupants of subject premises "expands to occupants found outside the premises and its curtilage in certain circumstances"). This reasoning applies equally here.
We are persuaded that, in the present case, the officer's detention of the defendant was both reasonable and necessary for officer and public safety. See Riley v. California, --- U.S. ----, 134 S.Ct. 2473, 2485, 189 L.Ed.2d 430 (2014) (acknowledging "the tense atmosphere of a custodial arrest"). Under such circumstances, it is not unreasonable for a police officer to "not let people move around in ways that could jeopardize his safety." Brendlin v. California, 551 U.S. 249, 258, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).
Furthermore, we have authorized the stop of individuals in the absence of particularized reasonable suspicion in the interest of public safety in situations less volatile than the one Fogarty confronted here. For example, police may stop motorists without reasonable suspicion or probable cause during the execution of systematic and approved roadblocks. See Commonwealth v. Murphy, 454 Mass. 318, 322-323, 910 N.E.2d 281 (2009) (traffic stops at road blocks are constitutional seizures lacking reasonable suspicion or warrant, but are reasonable given the magnitude of problem of drunk driving). And, while we have not ruled directly on the constitutionality *747 of continued detention of passengers during a valid motor vehicle stop, see Commonwealth v. Perkins, 465 Mass. 600, 603 n.3, 989 N.E.2d 854 (2013), we acknowledge that every motor vehicle stop inevitably results in an initial stop of its passengers, see Commonwealth v. Quintos Q., 457 Mass. 107, 110, 928 N.E.2d 320 (2010) (every traffic stop necessarily involves momentary seizure of car's operator and its passengers).
Accordingly, weighing the immediate concern for officer and public safety created *869 by the execution of a warrant on a person believed to have used a firearm in the commission of a violent felony, we view the intrusion on the defendant's liberty for the time that it took for police to control the scene and execute the warrant as both minimal and reasonable. See Moses, 408 Mass. at 141-142, 557 N.E.2d 14.
We also reach this conclusion with the support of emerging case law from other jurisdictions. For example, the Supreme Court of Connecticut recently held that "the state's interest in officer safety is sufficiently compelling that, when officers have a reasonable concern for their safety while lawfully detaining a suspect, it is permissible for the officers to briefly detain the suspect's companion as a precautionary measure." State v. Kelly, 313 Conn. 1, 11, 95 A.3d 1081 (2014). Last year, the Supreme Court of Washington State concluded that "when executing an arrest, officers may seize nonarrested companions to control the scene of the arrest if they can articulate an objective rationale predicated specifically on safety concerns for the officers, the arrestee, his or her companions, or other citizens." State v. Flores, 186 Wash. 2d 506, 522, 379 P.3d 104 (2016). Connecticut and Washington are merely the latest examples in a trend of State courts granting police the authority to temporarily detain individuals near an arrestee when making an arrest.[5] Several Federal circuit courts also follow suit.[6]
*748 Therefore, having concluded the stop of the defendant permissible, we turn now to the separate question of the justification for the subsequent patfrisk. See Commonwealth v. Brown, 68 Mass. App. Ct. 261, 266, 861 N.E.2d 504 (2007) (authority to detain does not also give rise to justification of search).
3. Justification for the search. "[T]o proceed from a stop to a frisk, the *870 police officer must reasonably suspect that the person stopped is armed and dangerous," Commonwealth v. Martin, 457 Mass. 14, 19, 927 N.E.2d 432 (2010), quoting from Arizona v. Johnson, 555 U.S. 323, 326-327, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009), which includes suspecting that the person is illegally armed. See Commonwealth v. Resende, 474 Mass. 455, 461, 52 N.E.3d 1016 (2016) (police realization that suspect carried illegal firearm justified subsequent stop and frisk).
Here, the defendant was in the company of an individual believed to have recently possessed a firearm in the commission of a violent felony, see Commonwealth v. Monteiro, 71 Mass. App. Ct. 477, 479, 883 N.E.2d 334 (2008) (suspicious movement and communicating with a man "known to the police for gun-related incidents" supports reasonable suspicion); he defied a valid police order to stop, ibr.US_Case_Law.Schema.Case_Body:v1">id. at 480, 883 N.E.2d 334 (flight after valid stop heightens reasonable suspicion); and he tugged at his waistband while walking away, see Commonwealth v. Sykes, 449 Mass. 308, 314-315, 867 N.E.2d 733 (2007) (observing suspect "clench[ing] his waistband" supports suspicion that he is carrying firearm). The combination of these factors gives rise to a particularized reasonable articulable basis to believe that the defendant was illegally armed. See Commonwealth v. Colon, 87 Mass. App. Ct. 398, 402, 30 N.E.3d 860 (2015) ("collective factors *749 ... established reasonable suspicion of unlawful possession of a firearm"). Accordingly, we conclude that the judge properly denied the motion to suppress the firearm. We discern no error.
Order denying motion to suppress affirmed.

At the request of the Commonwealth, the judge dismissed charges of carrying a firearm without a license, and possession of a firearm without a firearm identification card.

We agree with the defendant that the judge erred in finding the shooting was "gang related," but that fact does not alter our analysis.

At the time, Fogarty was in plain clothes, but his badge was visibly displayed around his neck.

We agree with the defendant that the judge also erred in finding that both men continued walking away, but note that fact does not alter our analysis.

See, e.g., People v. Samples, 48 Cal. App. 4th 1197, 1206-1207, 56 Cal.Rptr.2d 245 (1996) (after defendant parked his vehicle without prompting, officers acted reasonably in detaining him incident to seizure of his passengers, whom officers reasonably suspected had engaged in sale of narcotics, because State's interest in officer safety outweighed relatively minor limitation on defendant's liberty); State v. Drury, 358 S.W.3d 158, 163 (Mo. App. 2011) ("[p]rotective detention is reasonable when it is for a limited duration, and when the individual's presence could create a risk of harm to the officer, the individual detained, or the public at large, even if the officer has no reason to believe the individual would intentionally cause harm"); State v. Sparr, 13 Neb. App. 144, 153-154, 688 N.W.2d 913 (2004) (police have authority to detain nearby individuals to ensure "personal safety and maintain the status quo during an investigative stop"); Commonwealth v. Mathis, 125 A.3d 780, 789 (Pa. Super. 2015), aff'd, --- Pa. ----, 173 A.3d 699 (2017) (during arrest, police may "briefly detain and direct the movement of an 'arrestee's companion' regardless of whether a reasonable suspicion exists that the companion is involved in criminal activity").

See, e.g., United States v. Lewis, 674 F.3d 1298, 1306 (11th Cir. 2012) ("[c]ase precedent from both the Supreme Court and this Circuit has established that, for safety reasons, officers may, in some circumstances, briefly detain individuals about whom they have no individualized reasonable suspicion of criminal activity in the course of conducting a valid [investigatory detention] as to other related individuals"); United States v. Maddox, 388 F.3d 1356, 1367-1368 (10th Cir. 2004), cert. denied, 544 U.S. 935, 125 S.Ct. 1689, 161 L.Ed.2d 504 (2005) (permitting protective stop of arrestee's companions incident to his arrest when officers had reasonable safety concerns); Trice v. United States, 849 A.2d 1002, 1006 (D.C. 2004), cert. denied, 543 U.S. 1078, 125 S.Ct. 934, 160 L.Ed.2d 820 (2005) ("[d]espite the general rule, immediate safety concerns may justify police in stopping, or stopping and frisking, a person based on his association with someone else whom the police reasonably suspect of criminal activity").