**141 Nev., Advance Opinion 67**

IN THE SUPREME COURT OF THE STATE OF NEVADA

THE STATE OF NEVADA,
Appellant,
vs.
RICKY KEVIN DUBUC,
Respondent.

No. 89831

**FILED**

DEC 23 2025


ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order granting respondent's motion to suppress evidence in a criminal case. Second Judicial District Court, Washoe County; Barry L. Breslow, Judge.

*Affirmed.*

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Marilee Cate, Appellate Deputy District Attorney, Washoe County,
for Appellant.

Evelyn Grosenick, Public Defender, and Kathryn Reynolds, Chief Deputy Public Defender, Washoe County,
for Respondent.

BEFORE THE SUPREME COURT, HERNDON, C.J., and BELL and STIGLICH, JJ.

*OPINION*

By the Court, STIGLICH, J.:

Respondent Ricky Kevin Dubuc was charged with felony carrying a concealed weapon arising out of a search after he was stopped by

25-55878

police in a parking lot. Police had been surveilling Dubuc's associate as a suspect in an unrelated crime. Police observed Dubuc and the other man enter Dubuc's vehicle and stopped them in a parking lot after they exited the vehicle. In response to an officer's question, Dubuc admitted that he had a handgun in the waistband of his pants. Police handcuffed Dubuc and then searched for and seized the weapon. During the subsequent criminal court proceedings, Dubuc moved to suppress the evidence obtained in the search, arguing that reasonable suspicion did not exist to support the stop and that the search was unlawful. The district court agreed with Dubuc and suppressed the evidence seized and statements made by Dubuc, and the State appeals.

The State failed to show reasonable suspicion that Dubuc was involved in a crime and thus lacked a basis to detain and search him. Reasonable suspicion is individualized. Thus, mere proximity to a person who was under surveillance and then arrested does not, standing alone, support detaining and searching the arrestee's companion. Because there was no reasonable basis to suspect Dubuc's involvement in a crime, we affirm.

*FACTS AND PROCEDURAL HISTORY*

Police were surveilling Dubuc's associate, observed Dubuc with him, and identified Dubuc. In a parking lot, police stopped Dubuc and his associate as they were walking toward a store and arrested the associate pursuant to an outstanding warrant. Police also detained Dubuc and asked him "if he had anything on him that he shouldn't." Dubuc told police he carried a gun concealed in his waistband and answered "no" when asked if he had a concealed weapons permit. Police then handcuffed Dubuc and removed the firearm from Dubuc's waistband.

Dubuc was thus charged with illegally carrying a concealed weapon. Dubuc had no outstanding warrants, and the arrest report did not indicate that police suspected Dubuc had committed, was committing, or would soon commit a crime before detaining him. The arresting officer testified at the preliminary hearing that Dubuc was not being specifically watched and that the officer did not know of any criminal history of Dubuc at the time of the detention.

Dubuc challenged the stop that precipitated the arrest as unconstitutional and moved to suppress the evidence seized and statements made during the encounter. The State argued that the search was permissible as analogous to searching a vehicular passenger during a traffic stop. After a hearing, the district court found that the facts known at the time did not indicate criminal activity by Dubuc and concluded that the State had failed to show reasonable suspicion to support searching Dubuc. The district court thus concluded that Dubuc was illegally detained and suppressed the statements and physical evidence that stemmed from the detention. The State appeals.

## DISCUSSION

The State argues that searching Dubuc was permissible and that the district court failed to balance officer safety with the limited degree of Dubuc's detention. We disagree because officer safety does not provide a blank check to search a person who is not individually suspected of involvement in a crime.

"[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Arterburn v. State*, 111 Nev. 1121, 1125, 901 P.2d 668, 670 (1995) (quoting *Terry v. Ohio*, 392 U.S. 1, 16 (1968)). The United States and Nevada Constitutions bar unreasonable searches and seizures. *Grace v. Eighth Jud. Dist. Ct.*, 132

Supreme Court
OF
Nevada

(0) 1947A

Nev. 511, 516, 375 P.3d 1017, 1020 (2016); *see* U.S. Const. amend. IV; Nev. Const. art. 1, § 18. The reasonableness of a stop "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Maryland v. Wilson*, 519 U.S. 408, 411 (1997) (internal quotation marks omitted).

Warrantless searches and seizures are presumptively unreasonable unless a well-established exception is present. *Grace*, 132 Nev. at 516, 375 P.3d at 1020. One exception permits law enforcement officers to stop an individual temporarily when they have reasonable suspicion the individual "has committed, is committing or is about to commit a crime." *Somee v. State*, 124 Nev. 434, 442, 187 P.3d 152, 158 (2008) (quoting NRS 171.123(1)). Reasonable suspicion "must be based on specific articulable facts," *id.*, and requires an "*individualized* suspicion of wrongdoing,"[1] *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000) (emphasis added); *State v. Lisenbee*, 116 Nev. 1124, 1127, 13 P.3d 947, 949 (2000). Such suspicion requires "more than an inchoate and unparticularized suspicion or hunch." *Lisenbee*, 116 Nev. at 1128, 13 P.3d at 949 (internal quotation marks omitted). "'[R]easonable suspicion' must be specifically directed to the person to be searched." *United States v. Afanador*, 567 F.2d 1325, 1331 (5th Cir. 1978); *see also Proferes v. State*, 116 Nev. 1136, 1139, 13 P.3d 955, 957 (2000) ("There must be some objective information to support a reasonable suspicion connecting the person to

---

[1]The requirement of an individualized suspicion may be set aside upon showing a "special need" apart from the State's normal interest in law enforcement generally, such as an ultimate policy goal distinct from the immediate purpose of the search. *Ferguson v. City of Charleston*, 532 U.S. 67, 79, 87 (2001). This case took place in the context of ordinary law enforcement operations, so that exception is not at issue.

criminal activity."), *overruled on other grounds by Rosky v. State*, 121 Nev. 184, 111 P.3d 690 (2005). Courts look to the totality of the circumstances and will suppress evidence obtained on the basis of a purported reasonable suspicion where the suspicion is not supported by the record. *Somee*, 124 Nev. at 443, 187 P.3d at 158-59. We review the district court's legal conclusions de novo and its related findings of fact for clear error. *Id.* at 441, 187 P.3d at 157-58.

The State relies on *Arizona v. Johnson*, 555 U.S. 323 (2009), and *Cortes v. State*, 127 Nev. 505, 260 P.3d 184 (2011), which applied *Johnson*, for the proposition that police may detain an arrestee's companion out of concern for officer safety. The State's reliance is misplaced for two reasons. First, *Johnson* addresses a traffic stop where a traffic violation supported lawfully detaining the driver and, as a practical matter, any passengers in the vehicle. 555 U.S. at 326-27. This is distinguishable from stopping two pedestrians in a parking lot when one is a suspect and the other, who is not, may simply leave. Second, *Johnson* observes that during "an on-the-street encounter," a stop requires that a "police officer reasonably suspects that the person *apprehended* is committing or has committed a criminal offense." *Id.* at 326 (emphasis added). *Johnson* does not support ignoring the requirement of an individualized reasonable suspicion that the person apprehended is involved in a crime. Even were we to accept the State's contention that *Cortes* extends beyond traffic stops, its application runs aground here, given that *Cortes* notes police must reasonably suspect that the passenger frisked is personally dangerous or involved in criminal activity. 127 Nev. at 510, 260 P.3d at 188. The State has not made that showing.

When the police stopped Dubuc, asked him if he was carrying contraband, handcuffed him, and searched him, the circumstances did not give rise to a reasonable suspicion that Dubuc was involved in a crime. We therefore conclude that the stop was unconstitutional, and the district court did not err in suppressing the evidence resulting from it. We stress that police must have an individualized suspicion that a companion of a suspect is involved in criminal activity to justify stopping the companion. The invocation of officer safety does not provide a blank check to stop a person absent specific articulable facts that the person committed, is committing, or will commit a crime. Clearly, when executing a lawful arrest, police may direct the arrestee's companion or companions to step away and not interfere. But police may not stop companions of whom no crime is suspected—mere association with the suspect is not criminal and does not satisfy the constitutional burden.

The other authorities cited by the State to justify stopping a suspect's companion in nontraffic settings do not persuade us that a different outcome is merited. For instance, the State cites *Commonwealth v. Ramirez*, 93 N.E.3d 864 (Mass. App. Ct. 2018). There, the court permitted a temporary detention of a suspect's companion for law enforcement to safely conduct an arrest. *Id.* at 867. Searching the companion, however, was only justified when the companion's association with the suspect was considered alongside individualized facts suggesting the companion was engaged in criminal activity, namely fleeing and grabbing his waistband as if carrying a firearm. *Id.* at 870. *Ramirez*'s reasoning is instructive: it analyzes the justification for the detention and then, separately, for the

search.[2] *Id.* at 867, 869-70. Similarly, in *People v. Chestnut,* 409 N.E.2d 958, 962 (N.Y. 1980), the search took place after the officer witnessed the suspect pass an object to the companion. The officer suspected the object to be the firearm used in a related robbery and searched the companion based on that individualized suspicion. *Id.*

The State also highlights the "automatic companion rule," which "allows the police to pat-down any companion of an arrestee to give assurance that they are unarmed" and thus would have us countenance the search here even without individualized suspicion as to Dubuc. *In re D.S.,* 5 N.E.3d 1063, 1067-68 (Ohio Ct. App. 2013). Nevada, however, has not adopted the automatic companion rule, and we take this opportunity to affirmatively reject that doctrine.

The State further argues that the district court should have conducted an evidentiary hearing before granting Dubuc's motion to suppress. The State, however, has not identified disputed material facts that an evidentiary hearing would have clarified. Therefore, an evidentiary hearing was not needed. *See Cortes,* 127 Nev. at 509, 260 P.3d at 187-88 (observing that the absence of disputed material facts entailed that an evidentiary hearing on a motion to suppress was not merited). Relief is not merited on this basis.

## CONCLUSION

The United States and Nevada Constitutions bar warrantless searches and seizures unless a well-established exception is present. One such exception permits detaining and searching a person reasonably

---

[2]In this regard, *State v. Kelly,* 95 A.3d 1081 (Conn. 2014), and *United States v. Lewis,* 674 F.3d 1298 (11th Cir. 2012), on which the State also relies, are less instructive in that they limit their analyses to the detentions.

suspected of being involved in a crime. This exception, however, does not tolerate searching the companion of a person suspected of involvement in a crime merely because the companion is associated with the suspect. Invoking officer safety does not justify stopping and searching the companion absent individualized, articulable facts supporting a suspicion that the companion was, is, or is about to be involved in a crime. The police here violated Dubuc's constitutional rights, and the district court did not err in suppressing the proceeds of the unconstitutional detention and search. We affirm.

_____, J.
Stiglich

We concur:

_____, C.J.
Herndon

_____, J.
Bell