## COMMONWEALTH *vs.* DAVID TYNES.

Middlesex. March 2, 1987. — July 6, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Instructions to jury. *Motor Vehicle,* Operating under the influence. *Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions.

A defendant charged with operating a motor vehicle while under the influence of intoxicating liquor was not entitled to suppression of his incriminating statements to an off-duty police officer who, about eleven o'clock A.M., roused him from sleep at the wheel of his automobile, which was stopped on a public way, in gear with the motor running, where, after the hearing on a motion to suppress, the judge was warranted in finding that, when the defendant made the statements, he was not in custody for purposes of the Miranda rule, and that the ununiformed police officer, who was outside his law-enforcement jurisdiction, had questioned the defendant merely as a private citizen and not as an agent of the police. [372-374]

At the trial of a complaint for operating a motor vehicle on a public way while under the influence of intoxicating liquor, there was no misstatement in the prosecutor's argument insofar as it implied that conviction could rest on proof that consumption of alcohol diminished the defendant's ability to operate a motor vehicle safely. [374]

At a criminal trial no error appeared in the judge's instruction to the jury on the meaning of driving under the influence, which was in accordance with the principles of *Commonwealth* v. *Connolly,* 354 Mass. 169 (1985). [374-375]

In the charge to the jury in a criminal case, neither the judge's accurate statement about the legislative purpose of G. L. c. 90, § 24, under which the defendant was charged, nor a reference to a diminished ability to respond to "unexpected emergencies" by reason of consumption of alcohol, was prejudicial to the defendant by reason of being an inflammatory appeal to the jurors' personal safety considerations. [376]

No persuasive argument was advanced by a defendant appealing a second conviction under G. L. c. 90, § 24, for reconsideration of principles enunciated in *Commonwealth* v. *Connolly,* 354 Mass. 169 (1985). [376-377]

COMPLAINT received and sworn to in the Framingham Division of the District Court Department on April 22, 1985.

On appeal to the jury session, a pretrial motion to suppress evidence was heard by *Robert A. Belmonte, J.*, and the case was tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Joseph F. Annunziata, Jr.,* for the defendant.

*Fern L. Nesson,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. The defendant was convicted by a jury of six on one count of operating a motor vehicle while under the influence of intoxicating liquor, his second such offense within a six-year period. See G. L. c. 90, § 24, (1) (*a*) (1) (1984 ed.). Prior to trial, he moved to suppress testimony concerning incriminating statements he had made on the day of his arrest. That motion was denied.

Testimony was taken at a pretrial hearing on the defendant's motion to suppress. John J. Hagan stated that at all relevant times he was employed as a police officer in the town of Littleton. He resided, however, in Holliston where, on the morning of March 30, 1985, he went jogging, dressed in a sweat suit and not showing any badge or insignia of office as a policeman. Near Phipps Hill, at 11 A.M., Hagan noticed a line of automobiles stopped at an intersection. When the light turned green, one of these vehicles remained stationary, and others were forced to drive around it. The vehicle was in gear, and the engine was running. Hagan observed the defendant at the wheel, apparently unconscious or asleep. After rapping on a window and getting no response, Hagan opened the door on the driver's side and immediately detected an odor of alcohol inside. He shook the defendant, who remained unresponsive. Hagan noted a very strong odor of alcohol on the defendant's breath. He asked a passerby to summon an ambulance.

At this point, the defendant roused himself. Hagan asked if he was all right; the defendant said "yes." Hagan asked whether he was ill or had any history of fainting or epilepsy. The defendant said "no." Hagan asked whether he knew who and

where he was. The defendant gave his name and said "he was coming from Framingham and he was going home." The vehicle then started to move. Hagan reached in and "put the vehicle into the parked position." The defendant reached for the keys, but Hagan removed them from the ignition.

Hagan questioned the defendant further. In response to questions, the defendant admitted that he had been drinking on the morning in question, that he had lost consciousness due to drinking and lack of sleep, and that his drinking had "affected his operation to drive." When a Holliston police officer arrived · on the scene, Hagan "conveyed [his] observations" to the officer, including his opinion that the defendant had been driving while under the influence of intoxicating liquor.

Hagan never identified himself to the defendant as a police officer, nor did he arrest the defendant or advise him of his rights. He testified that it was his understanding that his jurisdiction as an officer extended only to Littleton and contiguous towns, not including Holliston. He became involved, not as a police officer but as a certified emergency medical technician and as a "concerned citizen." On cross-examination, Hagan conceded that he did not return the automobile keys to the defendant, and he admitted that he would not have given Tynes his keys, if asked; but he said that the defendant was at all times free to leave on foot, if he chose.

The Holliston police officer, Charles Todd, testified that he arrested the defendant and advised him of his rights while driving the defendant in a cruiser to the Holliston police station. The defendant did not testify at the suppression hearing. In light of the uncontested testimony of Hagan and Todd, the judge found that Hagan had acted as a private citizen when querying the defendant; the defendant had not been in custody when Hagan questioned him; and "the Defendant's statements were voluntary, intelligently given."

In this appeal, the defendant argues that (1) suppression of his pretrial statements were compelled by *Miranda* v. *Arizona,* 384 U.S. 436 (1966)[1]; (2) the prosecutor's closing statement

---

[1] In his motion to suppress and his arguments at the hearing pursuant to it, the defendant also contended that his statements to Hagan were inadmis-

was prejudicial because it implied, incorrectly, that drinking and driving (without more) is a crime in Massachusetts; (3) the judge's instructions misstated the Commonwealth's burden of proof as enunciated in *Commonwealth* v. *Connolly,* 394 Mass. 169 (1985); (4) the judge's use in his instructions of this court's statement of the legislative purpose behind G. L. c. 90, § 24 (1984 ed.), was inflammatory; and (5) in the alternative, the standard defined in *Connolly* should be revised so as to permit conviction under G. L. c. 90, § 24, only on proof that intoxication caused the defendant to operate his vehicle in an "unsafe" manner. We transferred this case from the Appeals Court on our own motion, and we affirm.

1. *The Miranda question.* "In *Miranda* v. *Arizona,* 384 U.S. 436, 444, 461 (1966), the Supreme Court formulated a series of prophylactic rules . . . designed 'to secure the privilege against self-incrimination' from overreaching and coercion during custodial interrogation. Custodial interrogation was defined as 'questioning initiated by *law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way' (emphasis supplied). *Miranda* v. *Arizona, supra,* at 444." (Citation omitted.) *Commonwealth* v. *Mahnke,* 368 Mass. 662, 676 (1975), cert. denied, 425 U.S. 959 (1976). The judge found that the defendant was not in custody when Hagan asked him questions and, implicitly, that there was no violation of *Miranda* in this case because its strictures apply only to custodial interrogation by law enforcement officers or their "private proxies." *Mahnke, supra* at 677. Hagan performed in neither capacity when he interrogated the defendant. There was no error.

It is undisputed that Hagan wore no badge of office; nor did he give any verbal indication that he was employed anywhere as a police officer. Therefore, we see no reason to suppose that the defendant's will was affected in any way by that force of "compulsion [which is] inherent in custodial surroundings,"

sible because, in his "confused, startled and disoriented condition," the statements were not voluntary. In his brief, however, the defendant has not renewed this argument for purposes of his appeal. Thus, we deem it waived. See Mass. R. A. P. 16(a) (4), as amended, 367 Mass. 919 (1975).

*Miranda* v. *Arizona, supra* at 458; as a consequence, the animating concerns of *Miranda* are simply not implicated here. See *Berkemer* v. *McCarty,* 468 U.S. 420, 442 (1984) (where lone police officer detains motorist, asks modest number of questions, and requires performance of field sobriety test[s] at location visible to passersby, motorist is not "in custody" for purposes of *Miranda*). See also *Commonwealth* v. *Bryant,* 390 Mass. 729, 736-737 (1984).

More than this, the record shows that Hagan did not suppose himself to possess a police officer's authority to arrest or otherwise to detain the defendant. Indeed, this court has recently held that "[w]hen a police officer makes a warrantless arrest outside of his jurisdiction, and not in 'fresh and continued pursuit' of the suspect within the meaning of G. L. c. 41, § 98A, then he acts as a private citizen . . . ." *Commonwealth* v. *Grise,* 398 Mass. 247, 250 (1986), quoting *Commonwealth* v. *Gullick,* 386 Mass. 278, 282 (1982). "When police officers leave their jurisdiction 'they cease[] to be officers . . . .'" *Id.* Thus, from the standpoint of the law, Hagan acted as he portrayed himself — in the capacity of a private citizen, to whose acts *Miranda* does not apply.

The defendant argues, however, that we should view Hagan as acting in the role of an adjunct or assistant to the Holliston police and not as an ordinary citizen. Without question, "the police may not accomplish through private proxies what they cannot do directly." *Mahnke, supra.* Statements may be suppressed for failure to give Miranda warnings where the interrogator "was 'functioning as an instrument of the police' (*United States* v. *Brown,* 466 F.2d 493, 495 [10th Cir. 1972]; cf. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 487 [1971]), or acting as an agent of the police pursuant to a scheme to elicit statements from the defendant by coercion or guile . . . ." *Mahnke, supra.*

This argument is not persuasive. The mere fact that Hagan helped the local police is insufficient to render him an agent or an instrument of the police. This is so, not only because Hagan's efforts were no different from what would be desired or expected on the part of any private citizen, but also because

there is no evidence that the Holliston police even knew about Hagan's opportunity to interrogate the defendant prior to its occurrence. *Commonwealth* v. *Mahnke, supra* at 677-678. The motion to suppress was properly denied.

2. *The prosecutor's argument.* Over the defendant's objection, the prosecutor was permitted to argue to the jury in his summation that "[i]f you find Mr. Tynes the way he was in the morning could have done all those things [stopping at traffic lights, parking in narrow spaces, braking or steering swiftly to avoid trouble] significantly the same way as if he hadn't had anything to drink, find him not guilty." The defendant argues that the prosecutor was permitted in effect to state incorrectly that "drinking and driving [is] a crime," because the jury could have inferred from the prosecutor's statement that they were free to convict if they found "the defendant was in any way at all affected by the alcohol he had taken."

Our law provides punishment for drivers whose "consumption of alcohol diminished [their] *ability* to operate a motor vehicle safely" (emphasis in original). *Commonwealth* v. *Connolly,* 394 Mass. 169, 173 (1985). The prosecutor's words did nothing more than focus the jury's attention on the appropriate question whether the defendant's ability to perform normal driving tasks was diminished by any intake of alcohol. The prosecutor's statement did not imply that a conviction may rest on proof simply that the defendant was affected "in *any* way" by his drinking; rather, the statement implied, correctly, that a conviction may rest only on proof that alcohol affected him in a *particular* way, i.e., by diminishing his capacity to drive safely. There is no error.

3. *Jury instructions.* The defendant maintains that the judge's instructions to the jury on the meaning of driving "under the influence" in violation of G. L. c. 90, § 24, were erroneous.[2]

---

[2] In pertinent part, the charge given to the jury was as follows:

"A person· who is under the influence of intoxicating liquor does not have to be drunk or completely unconscious as a result of the intake of such intoxicating liquor.

"A person is under the influence if at the time of [*sic*] his consump-

We have stated previously that it is the Commonwealth's bur-
den in prosecutions under this statute to prove in relevant part
that "the defendant's consumption of alcohol diminished the
defendant's *ability* to operate a motor vehicle safely" (emphasis
in original), i.e., that his consumption of intoxicants left him
with "a diminished *capacity* to operate safely" (emphasis in
original). *Commonwealth* v. *Connolly, supra.* The charge given
here was in accordance with the principles set forth in *Connolly.*
"The test of the charge is the impression created by it as a
whole . . . ." *Commonwealth* v. *Benders,* 361 Mass. 704, 707
(1972). All told, the judge made no fewer than five references
to the requirement that intoxication must be found to have
diminished the defendant's capacity to drive safely, and he
used these words to sum up: "If the intoxicating liquor had
adversely affected the defendant's ability to operate a motor
vehicle safely, he is guilty. If it hasn't, he is not guilty."
Viewing the charge as a whole, we find no error.

tion of intoxicating liquor has diminished his ability to operate a
motor vehicle safely.

"This includes all of the well-known and easily recognized condi-
tions [and] degrees of intoxication. It also includes any condition
which results from indulging in any degree in intoxiating liquor and
which has negatively affected the defendant's intellect and control of
himself, and thus diminished his capacity to operate safely.

"Again, to be under the influence of intoxicating liquor, it is not
necessary to be intoxicated. A person is under the influence of intox-
icating liquor when he is affected by it to the extent that his judgment,
alertness, and ability to respond promptly and effectively to unex-
pected emergencies is diminished because of the consumption of
alcohol.

"And this condition may result even if the mental or physical
faculties are not impaired. The purpose of this statute is to protect
the public from drivers whose judgment and alertness and ability to
respond promptly and alertly to unexpected emergencies have been
diminished by the consumption of alcohol.

"The Commonwealth must prove beyond a reasonable doubt that
the defendant's consumption of alcohol distinguished [*sic*] the defend-
ant's ability to operate a motor vehicle safely.

"The Commonwealth is not required to prove that the defendant
actually drove in an unsafe or erratic manner, but it must prove that
the defendant has a diminished capacity to operate safely."

Concerning the defendant's claim that the charge was inflammatory, the defendant argues first that he was prejudiced by the judge's instruction that "[t]he purpose of this statute [G. L. c. 90, § 24] is to protect the public from drivers whose judgment and alertness and ability to respond promptly and alertly to unexpected emergencies have been diminished by the consumption of alcohol." The general rule is that "[a] judge may inform a jury about the legislative purpose of a statute, if he does so accurately." *Commonwealth* v. *Brunelle,* 361 Mass. 6, 12 (1972). The challenged portion of the charge is virtually a verbatim quotation from the relevant decision of this court. See *Connolly, supra.* Thus, the accuracy of the judge's statement of the legislative purpose is not in doubt. There was no error.

The defendant also contends that the judge erred by inflaming the passions of the jury when he instructed that "[a] person is under the influence of intoxicating liquor when he is affected by it to the extent that his . . . ability to respond promptly and effectively to unexpected emergencies is diminished because of the consumption of alcohol." The defendant views this reference to "unexpected emergencies" as having the improper effect of "focusing the jury's thoughts on concern for personal safety rather than on proof of the elements of the offense with which the defendant was charged." But these words do nothing more than the words used in reference to the Legislature's intent. Again, there was no error.

4. *Reconsideration of Connolly.* The defendant maintains that *Connolly* was wrongfully decided. He urges us to hold that, in order to convict a motorist pursuant to G. L. c. 90, § 24, the Commonwealth must prove not merely that the defendant's capacity for safe driving was diminished by consumption of alcohol, see *Connolly, supra,* but rather that drinking rendered his actual operation of his vehicle unsafe. We have reaffirmed our position in *Connolly* in *Commonwealth* v. *Marley,* 396 Mass. 433, 436-437 (1985). The defendant offers no persuasive argument which would incline us to change our views. As we pointed out in *Marley, supra* at 437, "*Connolly* did not announce any new legal principles but merely clarified

the meaning of 'operating under the influence' under G. L.
c. 90, § 24." See *Commonwealth* v. *Lyseth,* 250 Mass. 555,
558 (1925).[3]

*Judgment affirmed.*

---

[3] We are not persuaded that the *Connolly* standard permits the jury to
convict motorists on the sole basis of speculation or surmise as to their
operating capacities. Jurors are often asked to determine whether particular
individuals had particular capacities in particular circumstances. See, e.g.,
*Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967) (capacity to
appreciate wrongfulness of conduct; capacity to conform conduct to legal
norms).

The defendant argues, in addition, that the *Connolly* standard conflicts
with that part of G. L. c. 90, § 24 (1) (*e*), which creates a conclusive
presumption of innocence where a motorist's blood is shown to have had,
at the relevant time, a percentage by weight of alcohol of .05 or less. The
relevance of this argument escapes us, for the record does not show that
any scientific evidence was ever gathered in this case.