## Commonwealth *vs.* Joseph Limone.

Middlesex. September 8, 2011. - November 18, 2011.

Present: Ireland, C.J., Spina, Cordy, Botsford, & Gants, JJ.

*Search and Seizure,* Arrest, Pursuit. *Arrest. Constitutional Law,* Search and seizure. *Police,* Unlawful arrest. *Motor Vehicle,* Operating under the influence.

A Superior Court judge properly denied a criminal defendant's motion to suppress evidence obtained as a result of an encounter with a uniformed, off-duty police officer of a different city who, after the defendant's automobile struck the rear end of the officer's own automobile, told the defendant to step out of the vehicle, removed and retained the defendant's keys from the ignition, and told the defendant to sit and wait in his car, where the officer's actions fell short of an arrest sufficient to trigger the citizen's arrest rule, and were instead more akin to an investigatory stop, short of an arrest; moreover, in the circumstances, it was reasonable for the officer, as it would be for a private citizen, to prolong the stop until the police (of the city where the accident took place) arrived, in order to ensure the safety of the public and the defendant himself. [837-843]

Indictments found and returned in the Superior Court Department on September 19, 2006.

A pretrial motion to suppress evidence was heard by *Diane M. Kottmyer,* J., and the cases were tried before her.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Kevin J. Curtin,* Assistant District Attorney (*Patricia Gould,* Assistant District Attorney, with him) for the Commonwealth.

*Robert H. D'Auria* for the defendant.

*John M. Collins & John Ansbach* for Massachusetts Chiefs of Police Association, Inc., & another, amici curiae, submitted a brief.

Spina, J. The defendant Joseph Limone was indicted for operating while under the influence of intoxicating liquor (OUI) (seventh or subsequent offense), operating with a license su-

spended for a prior OUI, and operating with a revoked license, following an encounter with an off-duty Somerville police officer in the city of Woburn. He moved to suppress all evidence obtained as a result of the Woburn encounter, on the ground that the off-duty Somerville police officer performed an illegal extraterritorial arrest. Following an evidentiary hearing, a judge in the Superior Court denied the motion. After trial, the defendant was convicted by a jury as charged. The defendant appealed. The Appeals Court reversed the denial of his motion to suppress and set aside the convictions. *Commonwealth* v. *Limone*, 77 Mass. App. Ct. 903, 905 (2010) (*Limone*). We granted the Commonwealth's application for further appellate review.[1] For the reasons that follow, we affirm the order denying the defendant's motion to suppress, and affirm the convictions.

We recite the facts found by the motion judge, supplemented with undisputed testimony adduced at the hearing. See *Commonwealth* v. *Morgan*, 460 Mass. 277, 279 (2011). On the afternoon of August 4, 2006, Officer Robert Kelleher of the Somerville police department was returning to his home in Woburn, northbound on Interstate Route 93 north, after work. Kelleher was still in uniform, but was driving his private automobile. As he approached the Medford exit, he saw a red Oldsmobile automobile attempting to get on Route 93 northbound. Kelleher thought that the driver looked confused; he saw, through his rearview mirror, the Oldsmobile navigate on to Route 93 and make several lane changes. Kelleher took the Montvale Avenue exit, and came to a stop at a red light. While stopped, his vehicle was struck in the rear by the Oldsmobile. Kelleher got out of his car and approached the Oldsmobile, which was being operated by the defendant. He told the defendant that he had struck his car, for which the defendant apologized repeatedly. At this point, Kelleher formed the opinion that the defendant was under the influence of alcohol, and told the defendant to step out of the car. The defendant did so. Concerned that the defendant would leave the scene and cause injury to another person, Kelleher then reached into the Oldsmobile and took the keys from the ignition. He did not ask the defendant for his license and registration, did not

---

[1] We acknowledge the amicus brief submitted by the Massachusetts Chiefs of Police Association, Inc., and Mothers Against Drunk Driving.

attempt to investigate or collect evidence, nor did he ask the defendant to perform field sobriety tests. Rather, Kelleher told the defendant to get back into his car, and then Kelleher returned to his own car and called the Woburn police on his cellular telephone. The two waited in their separate cars for the Woburn police to arrive.

Officer David Simonds of the Woburn police department arrived at the scene. He approached the Oldsmobile and asked the defendant whether he was all right. Smelling alcohol, the officer formed the impression that the defendant was under the influence and asked him for his license and registration. Instead, the defendant handed him a pack of cigarettes. Simonds asked the defendant to step out of the car. As the defendant stepped out, the officer observed a "nip" bottle of whiskey on his lap. Simonds then asked the defendant to perform a series of field sobriety tests; the defendant was unable to complete the tests. Officer Simonds placed the defendant under arrest. The defendant recorded a blood alcohol content of .12, which was in excess of the legal limit of .08. A subsequent check revealed that the defendant had six previous convictions of OUI.

The defendant argues that the motion judge should have suppressed all evidence resulting from the encounter with Kelleher because Kelleher's actions in Woburn amount to an unlawful arrest outside of his territorial jurisdiction as a Somerville police officer. Because Kelleher was out of his jurisdiction, the defendant argues, he stood as a private citizen and, therefore, could not effectuate an arrest for a mere misdemeanor. When Kelleher first formed the impression that the defendant was under the influence of alcohol, he knew nothing about the defendant's six prior convictions; to his knowledge, therefore, the defendant was committing only a misdemeanor first offense of driving while under the influence. In these circumstances, the defendant argues that he should have been free to drive away, but instead Kelleher, in full uniform, "stop[ped]" and "arrest[ed]" or at least "seized" him by telling him to get out of the car, taking his keys from the ignition, and telling him to get back in his car and wait. Because these illegal actions by Kelleher led to Officer Simonds collecting evidence of the defendant's guilt, the argument goes, the remedy should be suppression of the evidence.

The Appeals Court largely accepted these arguments. See *Limone, supra* at 904-905. Considering Kelleher's actions to have amounted to a seizure implicating the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, the Appeals Court held that in Woburn, Kelleher stood as a private citizen and thus could not arrest the defendant for a perceived misdemeanor. *Id.* Because the evidence against the defendant was collected pursuant to an unlawful arrest, in the Appeals Court's judgment the proper remedy was to suppress the evidence under the "fruit of the poisonous tree" doctrine, and reverse the convictions. *Id.* at 905, citing *Wong Sun* v. *United States,* 371 U.S. 471, 488 (1963).

In reviewing a trial judge's decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error. *Commonwealth* v. *Gil,* 393 Mass. 204, 211-212 (1984). We make an independent determination whether the judge correctly applied the law to the facts found. *Commonwealth* v. *Cunningham,* 405 Mass. 646, 655 (1989).

Under the common law, a police officer cannot generally make a warrantless arrest outside of his territorial jurisdiction. *Commonwealth* v. *Grise,* 398 Mass. 247, 249 (1986) (*Grise*). The Legislature has enacted some exceptions to this rule. One exception permits an officer who observes an arrestable offense being committed within his jurisdiction and in his presence to pursue the offender into a neighboring jurisdiction and effectuate an arrest. G. L. c. 41, § 98A. See *Grise, supra.* A second exception permits an officer employed in one jurisdiction, and sworn in as a special police officer in a second jurisdiction, to effectuate an arrest in the second jurisdiction. G. L. c. 41, § 99. See *Grise, supra* at 252-253 n.6. Finally, a third exception permits a police officer in one jurisdiction to request an officer from a second jurisdiction for "suitable aid" in the first officer's jurisdiction. G. L. c. 37, § 13. See *Commonwealth* v. *Twombly,* 435 Mass. 440, 442-444 (2001).

None of the three exceptions applies to the facts of this case. Kelleher was not in fresh and continued pursuit (G. L. c. 41, § 98A) of the defendant from Somerville into Woburn; rather, the defendant struck Kelleher's vehicle in Woburn. Kelleher had

not been sworn in as a special Woburn police officer. Finally, the Woburn police did not request Kelleher's aid in apprehending the defendant; rather, Officer Simonds arrived in response to Kelleher's telephone call about the accident. In such a scenario, the rule consistently applied by this court is that an out-of-jurisdiction officer stands as a private citizen, and only may effectuate an arrest if a private citizen could do so as a "citizen's arrest." See, e.g., *Commonwealth* v. *Hernandez*, 456 Mass. 528, 530-531 (2010); *Commonwealth* v. *Kerr*, 409 Mass. 284, 287 (1991); *Grise, supra* at 250-251. The next question is therefore whether Kelleher, as a private citizen, would have been entitled to arrest the defendant.

The answer to this question is no. It is well settled that in Massachusetts, a private citizen may not make a citizen's arrest for a misdemeanor.[2] See, e.g., *Grise, supra.* Officer Kelleher knew only that the defendant potentially was guilty of a misdemeanor — a first offense of OUI. See *Commonwealth* v. *Savage*, 430 Mass. 341, 346 n.6 (1999). Therefore, standing in the shoes of a private citizen, Officer Kelleher was not permitted to effect a citizen's arrest of the defendant.

We have not yet addressed, however, the nature of the contact between Kelleher and the defendant. Turning to that inquiry, we now hold that Kelleher's actions in telling the defendant to step out of the car, removing and retaining his keys from the ignition, and telling him to sit and wait in his car, fall short of an "arrest" sufficient to trigger the citizen's arrest rule. Instead, Kelleher's actions were more akin to an investigatory "stop," short of an arrest. In the circumstances of this case, it was reasonable for Kelleher — as it would be for a private citizen

---

[2]This court previously has rejected the rule of English common law, whereby a private citizen may make a citizen's arrest for a misdemeanor, provided that the misdemeanor (1) is committed in his presence, (2) amounts to a breach of the peace, and (3) is continuing, or at least merely interrupted and likely to resume. *Commonwealth* v. *Grise*, 398 Mass. 247, 250-251 (1986). *Commonwealth* v. *Gorman*, 288 Mass. 294, 297-299 (1934). Operating while under the influence (OUI) is a breach of the peace in Massachusetts. *Id.* States that have adopted the English rule have had no difficulty concluding that a police officer acting extraterritorially properly arrested a defendant in circumstances more provocative than here, as in those States, a private citizen would be entitled to do so. See, e.g., *State ex rel. State* v. *Gustke*, 205 W. Va. 72, 80-83 (1999); *Waukesha* v. *Gorz*, 166 Wis. 2d 243, 246-249 (Ct. App. 1991).

— to prolong the "stop" until the Woburn police arrived, in order to ensure the safety of the public and of the defendant himself.

Determining the moment of an arrest is often an important issue in cases involving the propriety of police procedures. See, e.g., *Commonwealth* v. *Martinez*, 458 Mass. 684, 694-697 (2011) (compliance with six-hour safe harbor for interrogating arrested individuals depends on moment of arrest); *Commonwealth* v. *Hampton*, 457 Mass. 152, 154-159 (2010) (compliance with statute requiring police to allow arrested individual's telephone call depends on moment of arrest). In such cases, we have relied on a test for whether an arrest has occurred. The test is an objective one, and asks whether there is "[1] an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained." *Commonwealth* v. *Powell*, 459 Mass. 572, 580 (2011), quoting *Commonwealth* v. *Grandison*, 433 Mass. 135, 145 (2001).[3]

Under the second element of the test, an officer's subjective intention to arrest is only a factor; it is not dispositive. Even if an officer denies a subjective intent to arrest a suspect, there may still be an arrest if such an intent reasonably can be inferred from the circumstances.[4] Although it is not required that the officer use the word "arrest" to communicate his intent, the officer must give some indication that the interaction has advanced from a mere investigation into an arrest. See *Commonwealth* v. *Quintos Q.*, 457 Mass. 107, 111 (2010) (chasing passenger of vehicle involved in police chase on foot and yelling "Stop, police," did not communicate intent to arrest).

Viewed objectively, the defendant in this case was not under arrest until Officer Simonds of the Woburn police arrived and placed him under arrest. Not only did Officer Kelleher not sub-

---

[3]Although we recognize that these principles were developed in the context of arrests by police officers acting in their own jurisdictions, we think that they apply equally to a police officer acting as a private citizen on an extraterritorial misdemeanor, at least where the officer is in uniform.

[4]Conversely, even if an officer does indeed subjectively intend to arrest a suspect, there may nonetheless be no arrest if such an intent was not reasonably understood by the defendant. See *Commonwealth* v. *Cook*, 419 Mass. 192, 198-200 (1994).

jectively intend to arrest the defendant,[5] he also did not objectively communicate such an intention to the defendant. As the motion judge found, "Kelleher did nothing to suggest to [the defendant] that he was placing him under arrest." As such, Kelleher's actions here were more akin to a reasonable investigatory stop by a citizen, not an arrest. Therefore, the evidence collected by Officer Simonds was not obtained in violation of the common-law citizen's arrest rule, and need not be excluded.

Kelleher did not place the defendant under arrest simply by telling him to step out of his vehicle.[6] To the contrary, both Kelleher and the defendant were each required under our laws, as are all citizens, to make known to the other his name, residence, and vehicle registration number before leaving the scene. See G. L. c. 90, § 24 (2) (*a*). At this moment, Kelleher's actions communicated an intent to exchange information after an accident, not an intent to arrest.

Next, Kelleher's removing the defendant's keys from the ignition after he smelled alcohol, and retaining them until Officer Simonds arrived, did not convert the interaction into an arrest. We have previously held, in the "*Terry* stop" context, that a police officer may take "reasonably prudent protective measure[s]" short of an arrest — including removal of a defendant's keys from the ignition — in order to prevent serious injury to the officer and bystanders. *Commonwealth* v. *Moses*, 408 Mass. 136, 141 (1990). See *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968). The critical inquiry in such cases is whether the degree of intrusion is reasonable in the circumstances. *Commonwealth* v. *Moses*, *supra*. Here, it is difficult to imagine a less intrusive manner by which Kelleher could have prevented injury to the public. He did not ask for a license and registration, did not investigate or collect evidence, did not perform field sobriety tests, nor did he touch the defendant or draw any weapon. He simply removed

[5]At the evidentiary hearing, Kelleher testified that if the defendant had tried to leave on foot, he would have let him. The motion judge appears to have accepted this testimony.

[6]The defendant disputes that the officer "told" him to get out of the vehicle, preferring the term "ordering." As noted, this court accepts a motion judge's findings of fact absent clear error. At the evidentiary hearing, Officer Kelleher stated that he "told [the defendant] to step out of the vehicle." We find no error in the motion judge's crediting this testimony.

the defendant's keys to prevent further operation of the vehicle, returned to his own vehicle, and contacted the Woburn police.[7]

Last, although a closer question, Kelleher's telling the defendant to return to his car, followed by Kelleher's returning to his own car and contacting the Woburn police, did not convert the interaction into an arrest. Again, Kelleher's actions are more consistent with an intent to stop for questioning than an intent to arrest. See *Commonwealth* v. *Quintos Q., supra* at 110-111. See also *Commonwealth* v. *Quintos Q.*, 73 Mass. App. Ct. 828, 831 (2009), *S.C.*, 457 Mass. 107 (2010) ("an intent to stop for questioning is not identical to an intent to effectuate an arrest"). Kelleher's actions were only minimally intrusive, given his purpose of ensuring the safety of the public and of the defendant himself. Kelleher and the defendant were standing in one travel lane, and their vehicles were blocking another lane. Mindful that he was operating outside of his jurisdiction on a misdemeanor, Kelleher took the preventive measure of telling the defendant to wait in his car, until the officers of the jurisdiction could arrive. Certainly such actions are less intrusive than chasing the passenger of a vehicle on foot after a police chase and yelling, "Stop, police," a situation where we recently found only a stop, not an arrest. See *Commonwealth* v. *Quintos Q.*, 457 Mass. 107, 110-111 (2010). We think that in the circumstances of this case, Officer Kelleher did not objectively communicate an intent to arrest the defendant.

We reviewed facts similar to these in *Commonwealth* v. *Tynes*, 400 Mass. 369 (1987) (*Tynes*). In that case, this court affirmed a judge's denial of the defendant's motion to suppress evidence of his operating while under the influence. *Id.* at 372, 373-374. The case involved a Littleton police officer who was jogging in Holliston, dressed in civilian clothing. *Id.* at 370. He observed a car stopped in the road operated by someone who appeared to be unconscious or asleep. *Id.* After knocking on the window and getting no response, the officer opened the driver's side

---

[7]Because we find no "arrest" on these facts, we take no position on whether there are exceptions to the rule prohibiting a citizen's arrest for a misdemeanor, where the "citizen" is a police officer operating outside his jurisdiction. Cf. *Commonwealth* v. *Claiborne*, 423 Mass. 275, 281 (1996) (relaxing requirements for citizen's arrest for felony, where "citizen" is police officer acting outside his jurisdiction).

door and immediately detected the odor of alcohol. *Id.* The defendant eventually roused himself and told the officer that he was on his way home. *Id.* at 371. When the vehicle started to move, the Littleton officer reached into the car, put the vehicle in park, and removed the keys from the ignition. The officer then asked the defendant some further questions, until a Holliston police officer arrived and placed the defendant under arrest. *Id.* On these facts, this court held that the defendant was not in custody for purposes of the Miranda rule until the Holliston police officer placed him under arrest. *Id.* at 372-374.

The only material difference between this case and *Tynes* is that here, Kelleher was still in his police uniform when he approached the defendant's vehicle. We decline, however, to create a "Superman" rule of law that would require out-of-jurisdiction, off-duty police officers to change into civilian clothing before interacting with private citizens following traffic accidents. So long as the officer does not use the indicia of his authority to collect evidence that a private citizen would be unable to gather, and the officer takes only reasonable preventive measures falling short of an actual arrest, the happenstance of the officer's being in uniform alone will not convert the interaction into an arrest.

Because we conclude that Kelleher did not "arrest" the defendant for the purposes of triggering the common-law rule against performing a citizen's arrest for a misdemeanor, and that his actions were reasonable preventive measures to ensure public safety, we agree with the motion judge that there is no need to exclude the evidence.[8] Our conclusion is buttressed by the lack of any official misconduct on these facts. As we recently explained, the common-law rule of exclusion in Massachusetts is employed as "a deterrent to the abuse of official power based on the application of State legal principles."[9] *Commonwealth* v. *Hernandez*, 456 Mass. 528, 532 (2010). Kelleher did not abuse

---

[8]To the extent that the defendant may have been "seized" by the government for the purposes of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, a matter on which we express no view, Officer Kelleher's actions were reasonable and did not violate either constitutional mandate.

[9]We base our decision on this common-law rule of exclusion, and not on the Fourth Amendment's exclusionary rule.

the powers of his office by taking reasonable measures, short of arrest, to ensure public safety; thus, there is nothing to deter.

Accordingly, we affirm the order denying the defendant's motion to suppress, and affirm the convictions.

*So ordered.*