Commonwealth vs. Gregory Bartlett.

Essex. January 10, 2013. - May 13, 2013.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

*Municipal Corporations, Police. Motor Vehicle, Operating under the influence. Controlled substances. Police, Unlawful arrest. Search and Seizure, Arrest, Pursuit. Statute, Construction.*

General Laws c. 37, § 13, a statute allowing police officers to act "in preservation of the peace," did not grant an officer from Merrimac authority to stop a motorist for driving while intoxicated in Amesbury, without a specific request for assistance from an Amesbury officer prior to the stop. [115-116]
A mutual aid agreement pursuant to G. L. c. 40, § 8G, granting full police powers to police officers in each signatory municipality, authorized a Merrimac officer to stop a motorist for driving while intoxicated in Amesbury before informing an Amesbury officer of the stop. [116-118]

Indictments found and returned in the Superior Court Department on October 2, 2009.

A pretrial motion to suppress evidence was heard by *Richard E. Welch, III*, J., and the cases were heard by *David A. Lowy*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Geoffrey DuBosque* for the defendant.

*Paul C. Wagoner*, Assistant District Attorney, for the Commonwealth.

*John M. Collins*, for Massachusetts Chiefs of Police Association, Inc., amicus curiae, submitted a brief.

Duffly, J. The defendant appeals from his convictions of operating while under the influence of alcohol, fifth or subsequent offense, and possession of a class D substance greater than one ounce. The defendant's sole claim of error is the denial of his pretrial motion to suppress evidence obtained as a result of a vehicle stop conducted by a Merrimac police officer in the neighboring city of Amesbury. Because the stop was authorized

under the terms of the mutual aid agreement between the municipalities, and that agreement complied with the requirements of G. L. c. 40, § 8G, we affirm the denial of the motion and the judgments of conviction.[1]

*Background.* The defendant was indicted on charges of operating while under the influence of liquor, fifth or subsequent offense, in violation of G. L. c. 90, § 24 (1) (*a*) (1); operating under the influence of liquor, with a blood alcohol content of .08 per cent or greater, fifth or subsequent offense, G. L. c. 90, § 24 (1) (*a*) (1); possession of a class D substance, more than one ounce of marijuana, G. L. c. 94C, § 34; and possession of a class C substance, G. L. c. 94C, § 34. The defendant moved to suppress the evidence obtained as a result of the Merrimac officer's stop of his vehicle. A Superior Court judge denied the motion, and a single justice of this court denied the defendant's request to file an interlocutory appeal pursuant to Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996). At a jury-waived trial in the Superior Court, the defendant was convicted of operating while under the influence and possession of a class D substance.[2] In a bifurcated proceeding, the defendant pleaded guilty to operating while under the influence, fifth or subsequent offense. The defendant appealed from his convictions, arguing that the motion to suppress should have been allowed, and we transferred his appeal to this court on our own motion.

*Motion judge's findings of fact.* Following an evidentiary hearing on the motion to suppress, at which a Merrimac police officer, Charles Sciacca, and an Amesbury police officer, Kevin Mulrenin, were the sole witnesses, the motion judge, who was not the trial judge, issued oral findings of fact and rulings of law. In reviewing a decision on a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004), quoting *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002).

---

[1]We acknowledge the amicus brief of the Massachusetts Chiefs of Police Association, Inc., in support of the Commonwealth.

[2]The defendant was acquitted of possession of a class C substance.

The motion judge found the following. Sciacca was on patrol duty in a marked Merrimac police cruiser on August 26, 2009, working the 11 P.M. to 7 A.M. shift. He crossed the town line into Amesbury in order to purchase a beverage at a convenience store on Route 110, and was returning to Merrimac when he saw a Chrysler sedan in front of him cross the double yellow line, return to the travel lane, and then cross the "fog line" on the right side of the road.

Sciacca followed the Chrysler for one-half mile, remaining in Amesbury throughout, and observed the vehicle "weave[] around the road" in light traffic, crossing significantly over the center line four times, and the fog line three times, within a twenty-second time frame. The vehicle made an abrupt stop, then turned into the parking lot of a restaurant and stopped without pulling into a parking space.

Sciacca pulled into the parking lot and used his cruiser to block the Chrysler from leaving. He then made a call over his radio to inform the Amesbury police, who use the same radio channel as Merrimac, that he had initiated a traffic stop.

Sciacca shined his spotlight into the vehicle and observed the defendant and a female passenger. The defendant's eyes were visibly watery and bloodshot. The officer approached the defendant's vehicle and asked for identification. The defendant, who smelled noticeably of alcohol, "fumble[d] with his wallet," but was unable to remove his license, and handed the entire wallet to Sciacca. The officer handed it back to the defendant and told him to get his license out of the wallet, which the defendant eventually did.

Amesbury police Officer Kevin Mulrenin and his partner arrived within approximately one minute of the stop.[3] The Amesbury officers asked the defendant to get out of his vehicle and

[3]The defendant contends that this finding was erroneous, since there was a thirty-two minute discrepancy between the call times recorded in the officers' written reports. The motion judge considered the discrepancy, and Amesbury police Officer Kevin Mulrenin's testimony that the clocks used by the two departments are sometimes out of sync. The judge credited Officer Charles Sciacca's testimony that the Merrimac officer radioed immediately after making the stop, and that the Amesbury officers arrived quickly. This finding was not clearly erroneous. See Commonwealth v. Murphy, 442 Mass. 485, 492 (2004) (we accept judge's subsidiary findings of fact absent clear error).

then administered sobriety tests; the defendant failed the tests and was arrested by the Amesbury officers.

A mutual aid agreement between Amesbury, Merrimac, and two other municipalities was introduced as an exhibit. The judge concluded as a matter of law that, under the terms of the agreement, which provides that on-duty police officers of each municipality may exercise "full police powers" in the other "[w]hen circumstances arise dictating an immediate response or action for the good of public safety," Sciacca made a valid stop outside his jurisdiction. The agreement requires that when an officer exercises police powers in such a situation, "the primary community will notify the host community as soon as practically possible." The judge determined that the Merrimac police officer's conduct constituted an "immediate response or action for the good of public safety" because the officer had a "very good basis" to believe that the defendant was driving under the influence of alcohol. Nonetheless, the judge ultimately did not decide the motion to suppress based on the mutual aid agreement. Rather, the judge denied the motion after concluding that the extraterritorial stop was permitted under G. L. c. 37, § 13, because Sciacca was acting in "preservation of the peace."

*Discussion.* Under common law, "a police officer may lawfully act only within jurisdictional limitations except if specially authorized to act by statute." *Commonwealth* v. *Savage*, 430 Mass. 341, 343 (1999). See *Commonwealth* v. *Grise*, 398 Mass. 247, 249 (1986). Several statutes recognize circumstances in which it may be desirable for a law enforcement officer to carry his authority outside his municipal boundaries. *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 74-75 (1990). See, e.g., G. L. c. 41, § 98A (officer may arrest motorist outside his jurisdiction where officer has observed motorist commit arrestable offense in his jurisdiction, so long as officer is in "fresh and continued pursuit"); G. L. c. 41, §§ 95, 98 (power to execute arrest warrants is Statewide).[4] The Commonwealth maintains that Sciacca's stop was authorized by G. L. c. 37, § 13, which addresses

---

[4] We have held that, under common law, an officer may make a warrantless arrest outside his jurisdiction if a private person would have been permitted to make a "citizen's arrest" under the same circumstances. A private citizen may not make an arrest for a misdemeanor, including driving while under the

when a law enforcement officer may request aid in carrying out his duties, as well as by G. L. c. 40, § 8G, which permits towns to form agreements for mutual aid.

The Commonwealth argues that the motion judge was correct in concluding that Sciacca's actions were authorized by G. L. c. 37, § 13. That statute provides that a law enforcement officer may "require suitable aid . . . in the preservation of the peace [or] in the apprehending or securing of a person for a breach of the peace." G. L. c. 37, § 13. See *Commonwealth* v. *Twombly*, 435 Mass. 440, 442-443 (2001). The plain language of the statute, however, grants an extraterritorial officer the authority to act only when an official of the host jurisdiction has requested assistance.[5] See, e.g., *Commonwealth* v. *Morrissey*, 422 Mass. 1, 6 (1996), quoting G. L. c. 37, § 13 (officer "had statutory authority to request the assistance of any private person 'in the apprehending or securing of a person for a breach of the peace' "); *Commonwealth* v. *Lahey*, 80 Mass. App. Ct. 606, 610 n.5 (2011) (person receiving request from officer "gains authority to stop the suspect").

The motion judge found that Sciacca stopped the defendant's vehicle before contacting the Amesbury police. The Merrimac officer's actions were not authorized under G. L. c. 37, § 13, without a specific prior request for aid from an Amesbury officer. Compare *Commonwealth* v. *Twombly, supra* at 441-442 (Salisbury officer instructed Amesbury officer to make stop in Salisbury), with *Commonwealth* v. *Limone*, 460 Mass. 834, 838 (2011) (Somerville officer would not have been entitled to arrest driver for misdemeanor under G. L. c. 37, § 13, where Woburn police did not request aid).

The motion judge, however, also considered the Commonwealth's argument that the stop was permitted by the mutual

---

influence in violation of G. L. c. 90, § 24 (1) (*a*) (1). See *Commonwealth* v. *Limone*, 460 Mass. 834, 838 (2011). See also *Commonwealth* v. *Claiborne*, 423 Mass. 275, 280-281 (1996) (officers need probable cause to believe suspect has committed felony to arrest without warrant outside jurisdiction).

[5]The statute originated in a colonial-era law allowing sheriffs and marshals, who "have often need of Assistants in the execution of their Office," to demand help from any person, with fines and punishments prescribed for those who refused to render assistance. General Laws of Massachusetts Colony at 103 (1672), reprinted in Colonial Laws of Massachusetts 1672-1686 (1995).

aid agreement between Amesbury and Merrimac, pursuant to G. L. c. 40, § 8G. We may affirm the ruling on any grounds supported by the record and the findings of fact. *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 102 (1997).

General Laws c. 40, § 8G, authorizes municipalities to enter into so-called mutual aid agreements, which permit police departments to share personnel, supplies, and equipment in order to "increase the capability of such departments to protect the lives, safety, and property of the people in the area." Police officers acting under such agreements "have all the immunities and powers granted to them in the municipalities that employ them, including, but not limited to, powers of arrest."[6] G. L. c. 40, § 8G.

The executive officers of the cities of Amesbury and Newburyport, and the towns of Salisbury and Merrimac, signed the mutual aid agreement at issue here in 2006. The agreement provides for "multi-jurisdictional police services" among the neighboring municipalities, and grants officers acting under the agreement "full police powers" in the participating jurisdictions. Under the terms of the agreement, therefore, Sciacca was authorized to exercise police powers in Amesbury only when "circumstances [arose] dictating an immediate response or action for the good of public safety."

The defendant's vehicle left its lane seven times during Sciacca's twenty-second observation, veering onto the shoulder three times and into the oncoming traffic lane four times. The motion judge characterized this driving as "erratic." Based on these observations, Sciacca had reasonable suspicion that the defendant's driving presented an immediate danger to others and to public safety. See, e.g., *Commonwealth* v. *Daniel*, 464 Mass. 746, 756 (2013), quoting *Commonwealth* v. *Smigliano*, 427 Mass. 490, 493 (1998) (" 'Erratic' driving that violates the civil motor vehicle code may give rise to a reasonable suspicion that a driver is impaired, permitting an investigatory stop");

---

[6]Pursuant to G. L. c. 41, § 99, small police departments wishing to allow officers of neighboring jurisdictions to act within their borders may "take the precaution" of swearing in neighboring towns' police as "special officers." *Commonwealth* v. *Grise*, 398 Mass. 247, 252 n.6 (1986). We have not suggested, however, that a mutual aid agreement may not grant similar authority.

*Commonwealth* v. *Blais*, 428 Mass. 294, 298 (1998) (brief stop to administer sobriety tests allowed on reasonable suspicion driver is impaired because "[a] drunk driver let loose on the highways is a deadly menace, not only to the officer, but also to anyone sharing the highways with him"); *Commonwealth* v. *Davis*, 63 Mass. App. Ct. 88, 90-91 (2005) (anonymous report of erratic driver "sufficient to conclude that an emergency existed, requiring immediate action for the protection of life and property of both the operator and the general public").

Sciacca properly effectuated a stop in order to ensure that the defendant's erratic operation did not endanger other drivers, and in order to determine whether the defendant was operating while under the influence of drugs or alcohol. These actions were within the authority that the mutual aid agreement granted him. In addition, Sciacca's radio call to Amesbury shortly after effectuating the stop fulfilled the requirement in the agreement that he "notify the host community as soon as practically possible."

> *Order denying motion to suppress affirmed.*
>
> *Judgments affirmed.*