NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030.  SJCReporter@sjc.state.ma.us

18-P-1674                                             Appeals Court

COMMONWEALTH  vs.  DONALD LARIVIERE.

No. 18-P-1674.

Essex.     May 2, 2019. - September 17, 2020.

Present:  Vuono, Maldonado, & Neyman, JJ.


Motor Vehicle, Operating under the influence.  Police, Unlawful
    arrest.  Arrest.  Search and Seizure, Motor vehicle.
    Practice, Criminal, Motion to suppress.


Indictments found and returned in the Superior Court
Department on February 1, 2018.

A pretrial motion to suppress evidence was heard by James
F. Lang, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Scott L. Kafker, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by him to the Appeals Court.


Scott F. Gleason for the defendant.
Catherine Langevin Semel, Assistant District Attorney, for
the Commonwealth.


MALDONADO, J.  The defendant, Donald Lariviere, was

indicted for operating a motor vehicle while under the influence

of intoxicating liquor (OUI), fifth offense, and for operating a motor vehicle after his license had been suspended for OUI.  He filed a motion to suppress evidence obtained as a result of an allegedly improper stop in Salisbury, Massachusetts, by a New Hampshire police officer.  After an evidentiary hearing, a judge of the Superior Court denied the defendant's motion to suppress.  A single justice of the Supreme Judicial Court allowed the defendant's petition for interlocutory review and transferred the matter to this court.  Before us is the defendant's appeal from the order denying his motion.  We affirm.

Background.  We summarize the judge's findings of fact, supplementing with additional facts as necessary from testimony and evidence that the judge implicitly credited.  See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008).

Shortly after midnight on October 12, 2017, Officer Daniel Henderson of the Seabrook, New Hampshire, Police Department was patrolling Route 1A in Seabrook when he saw a vehicle operated by the defendant straddle the dotted white line dividing the two southbound lanes of the road.  The defendant's vehicle then drifted almost halfway into the left lane of traffic and back to the right southbound lane, and continued to weave repeatedly within the right lane.

Henderson attempted to stop the defendant's vehicle by activating his cruiser's blue lights. Instead of pulling over, the defendant remained in the "right-hand lane, which became a clearly designated turning lane for Route 286," but he did not turn right. Rather, he continued driving southbound into Massachusetts. Just as the defendant crossed the State line between Seabrook, New Hampshire, and Salisbury, Massachusetts, Henderson activated the cruiser's siren. The defendant slowly pulled over, after traveling approximately fifty yards farther down the road. Henderson pulled up behind the defendant's vehicle but remained in his cruiser. Henderson notified his dispatcher and requested that the Salisbury police be alerted. He made no direct contact with the defendant.

Officer Jeremy Kelley of the Salisbury Police Department arrived at the scene approximately five minutes later. After conferring with Henderson, Kelley approached the defendant. During their interaction, Kelley saw that the defendant's eyes were bloodshot and glassy, and his speech was slow and slurred. Despite a strong odor of cologne in the vehicle, Kelley smelled alcohol in the vehicle and on the defendant's breath. Kelley conducted field sobriety tests and formed the opinion that the defendant was operating his vehicle while under the influence of alcohol. Kelley placed the defendant under arrest.

In his motion to suppress, the defendant argued that all evidence obtained as a result of his encounter with Kelley should be suppressed because Henderson lacked authority to stop the defendant in Massachusetts. The judge, recognizing that a police officer cannot act outside his jurisdiction unless specifically authorized by statute or in the performance of a valid citizen's arrest at common law, see Commonwealth v. Twombly, 435 Mass. 440, 442 (2001), articulated two bases for denying the defendant's motion. First, the judge relied on G. L. c. 41, § 98A, which authorizes an officer who sees a person committing an arrestable offense in his jurisdiction, to arrest that person in another jurisdiction upon "fresh and continued pursuit."[1] The judge concluded that § 98A applied here because Henderson saw the defendant commit the arrestable offense of failing to stop for a police officer in New Hampshire and then pursued him into Massachusetts. Second, the judge relied on Commonwealth v. Limone, 460 Mass. 834, 840 (2011), and determined that Henderson's actions in Massachusetts did not amount to an arrest of the defendant; rather, they were

---

[1] As the judge correctly ruled, G. L. c. 276, § 10A (allowing extraterritorial arrest upon fresh pursuit of person suspected of committing felony in other jurisdiction), did not apply because, at the time of the stop, Henderson did not know of the defendant's prior convictions and thus he could not have suspected the defendant of committing a felony rather than a misdemeanor. See Commonwealth v. Lahey, 80 Mass. App. Ct. 606, 611 n.6 (2011).

reasonable preventive measures to ensure public safety.  We conclude that the court's reasoning in Limone is controlling here and we affirm the order denying the defendant's motion to suppress on the basis that Henderson's actions amounted to a reasonable investigatory stop by a citizen, rather than an arrest.  See Limone, supra at 840.[2]

Discussion.  "In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings of fact absent clear error "but conduct an independent review of [the

_____

[2] In light of our holding, we do not reach the other issue raised in this appeal:  whether the judge properly denied the motion to suppress based on his reasoning that Henderson's conduct was permitted by G. L. c. 41, § 98A.  We nevertheless briefly touch upon the parties' arguments.  The judge noted that § 98A, by its express terms, is not limited to intrastate police action, and he construed the statute to authorize the pursuit of the defendant by Henderson, an out-of-State officer.  The Commonwealth asserts that the judge's interpretation of a plain reading of the statute is supported by Commonwealth v. Callahan, 428 Mass. 335, 338 (1998).  In Callahan, while concluding that under a similar statute, G. L. c. 41, § 99, Massachusetts municipalities are permitted to requisition special police officers from other States, the Supreme Judicial Court noted, "In view of the important public interests served by coordinating police functions between neighboring border towns, we decline to impose a territorial limit on the statute where the Legislature has not done so."  Callahan, supra.

However, citing language from a footnote in a later Supreme Judicial Court case, the defendant counters that § 98A authorizes only "extraterritorial arrests between governmental entities wholly within the Commonwealth" (emphasis added). Commonwealth v. Savage, 430 Mass. 341, 344 n.5 (1999).  For our present purposes, because we conclude that Henderson did not arrest the defendant, we need not -- and do not -- resolve the question whether the territorial scope of G. L. c. 41, § 98A, is limited to the Commonwealth.

judge's] ultimate findings and conclusions of law."'"
Commonwealth v. Jessup, 471 Mass. 121, 129 (2015), quoting
Commonwealth v. Scott, 440 Mass. 642, 646 (2004).  The defendant
argues that his motion should have been allowed because
Henderson acted without authority when he stopped the defendant
in Massachusetts.  We disagree.

"Under the common law, a police officer cannot generally
make a warrantless arrest outside of his territorial
jurisdiction."  Limone, 460 Mass. at 837, citing Commonwealth v.
Grise, 398 Mass. 247, 249 (1986).  "[A]n officer may make a
warrantless arrest outside his jurisdiction if a private person
would have been permitted to make a 'citizen's arrest' under the
same circumstances."  Commonwealth v. Bartlett, 465 Mass. 112,
115 n.4 (2013).  However, "[a] private citizen may not make an
arrest for a misdemeanor, including driving while under the
influence."  Id.

The defendant argues that Henderson conducted an improper
citizen's arrest for a misdemeanor.[3]  As the judge correctly

---

[3] The Commonwealth properly does not assert that Henderson
saw the defendant commit in New Hampshire the misdemeanor
offense of OUI.  Rather, the Commonwealth premises its argument
on the fact that Henderson saw the defendant commit in New
Hampshire the misdemeanor offense of failing to stop for a
police officer.  Moreover, as already mentioned, at the time of
the stop, Henderson did not know of the defendant's prior OUI
convictions and thus Henderson could not have known that the
defendant was committing a felony.

found, however, Henderson's stop of the defendant did not rise to the level of an arrest.

"[W]hether [an] encounter was an arrest or 'merely' a stop . . . depends on the proportional relationship of the degree of intrusiveness on the defendant to the degree of suspicion that prompted the intrusion." Commonwealth v. Willis, 415 Mass. 814, 819 (1993). "If an officer exceeds the scope of an investigatory stop, the seizure becomes an arrest." Commonwealth v. Manha, 479 Mass. 44, 48 (2018). This determination is highly fact-specific and "depends upon the circumstances of each case." Id. The detention of a motorist in a routine traffic stop, without more, does not rise to the level of an arrest. See Commonwealth v. Ayre, 31 Mass. App. Ct. 17, 20-21 (1991). Here, Henderson effected the stop in Massachusetts by means of his cruiser's lights and sirens, and made no other contact with the defendant. Given these circumstances, Henderson's actions did not rise to an arrest by an officer. Rather, Henderson's actions were akin to a "reasonable investigatory stop by a citizen." Limone, 460 Mass. at 840.[4]

---

[4] We note that the requirements for a citizen's arrest are "relaxed" in cases of police officers acting outside their territorial jurisdiction. Commonwealth v. Claiborne, 423 Mass. 275, 281 (1996). We pass on the question whether a citizen's investigatory stop, short of arrest, is afforded this same

In Limone, 460 Mass. at 835, an off-duty extraterritorial police officer approached the driver of a stopped vehicle that had collided with his. After a brief exchange in which he identified himself as a police officer, the officer, suspecting the driver was intoxicated, ordered the driver to step from the vehicle. Id. He then reached into the vehicle and removed the keys from the ignition before ordering the driver back into the vehicle. Id. at 835-836. Concluding that the extraterritorial officer took "reasonable . . . measures falling short of an actual arrest," the Supreme Judicial Court reasoned that the officer's actions were "minimally intrusive." Id. at 841, 842. Here, Henderson's actions were no more intrusive.

Henderson initially saw the defendant driving erratically and, activating his cruiser's blue lights, attempted to initiate a stop in his own jurisdiction. As the defendant crossed over the border into Massachusetts, Henderson did nothing more than add his cruiser's sirens. Once over the border, the defendant came to a stop, and Henderson simply pulled up behind him. Henderson then waited in his cruiser while promptly contacting local authorities.

Like the off-duty officer in Limone, 460 Mass. at 840, Henderson "did not ask [the defendant] for a license and

_____

relaxed standard, as the stop effected by Henderson would be permissible under either standard.

registration, did not investigate or collect evidence, [and] did not [ask the defendant to] perform field sobriety tests." Henderson also did not touch the defendant, draw any weapons, speak to the defendant, take away his keys, or order the defendant to get out of the vehicle.  See id. at 840-841.  "[I]t is difficult to imagine a less intrusive manner by which [Henderson] could have prevented injury to the public."  Id. at 840.  In sum, the stop was a "reasonable measure[], short of arrest, to ensure public safety."  Id. at 843.[5]

> Order denying motion to
> suppress evidence affirmed.

---

[5] Given our conclusion that the stop of the defendant's vehicle was lawful, we need not address the Commonwealth's alternative argument, raised for the first time on appeal, that evidence of the defendant's intoxication should not be suppressed, based on the inevitable discovery doctrine.